CHICAGO, M. & ST. P. RY. CO. v. HEIL.

(Circuit Court of Appeals, Eighth Circuit.   May 2, 1907.)

No. 2,495.

1. DAMAGES—MASTER AND SERVANT—ACTION FOR PERSONAL INJURY—EVIDENCE
OF CONDITION OF INJURED MEMBER, AND CAUSE THEREOF ADMISSIBLE.

   In an action for personal injury, evidence of the condition of the in-
jured member up to the time of the trial, and evidence to what extent
that condition was caused by the wrong of the defendant, and to what ex-
tent it was caused by the malpractice of the surgeon who treated it,
is admissible, because the defendant is liable for the former and free
from liability for the latter.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 183.]

2. MASTER AND SERVANT—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—SUFFI-
CIENCY OF EVIDENCE—FACTS—CONCLUSION.

   An engine drawing 31 loaded cars stopped at a station to permit the
unloading of freight from one of them, and the fireman, with the knowl-
edge of the engineer, stepped out for the purpose of crawling under the
engine and raking the ashes out of the ashpan.   It was dangerous to
the fireman to move the engine while he was under it.   He crawled
under it, and, as he was about to commence to rake out the ashes, the
engine moved backward, he placed his hands upon the rail and jumped
out, but before he could remove them one of the trucks passed over and
crushed his left hand.   The engine moved from two to four feet.   There
was evidence that this backward movement was caused by the recoil of
the rear cars of the train after it stopped and that the engineer could
not have prevented it.   There was also evidence sufficient to sustain a
finding by the jury that the backward movement was caused by the
engineer by giving the engine steam while the lever was in the backward
motion.

   Held, the case was properly submitted to the jury, because, if the
engineer caused the backward movement by giving the engine steam
while he knew the fireman had gone to crawl under it, he was guilty of
negligence, and the evidence was not conclusive that the fireman was
guilty of contributory negligence.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
ant, §§ 1051–1067, 1089–1132.]

3. COURTS—FEDERAL COURTS—PROCEDURE—APPEAL—DECISIONS REVIEWABLE—
AMOUNT OF DAMAGES.

   The question whether or not a jury has been induced by passion or
prejudice to assess an excessive amount of damages is not reviewable in
a federal appellate court.

4. WRIT OF ERROR—REVIEW—DISCRETIONARY MATTERS—NEW TRIAL—ORDER
GRANTING OR REFUSING DISCRETIONARY AND NOT REVIEWABLE.

   Where a trial court has jurisdiction to grant or refuse a new trial, its
order granting or refusing it is discretionary, and it is not reviewable
in a national appellate court.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error,
§§ 3860–3876.]

   (Syllabus by the Court.)

   In Error to the Circuit Court of the United States for the District
of Minnesota.

   M. B. Webber, for plaintiff in error.

   L. L. Brown (W. D. Abbott and S. H. Somsen, on the brief), for
defendant in error.

   Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. This was an action by a fireman against his employer, the railway company, for the negligence of his fellow servant, the engineer, whereby he lost one of his hands. It arose in a jurisdiction in which the fellow-servant doctrine has been abolished. At the trial a physician had testified that he had made an examination of the stump of the plaintiff's wrist at the preceding term of the court, and the railway company complains of the admission of the doctor's testimony, to the effect that he found two or three suppurating holes at the end of the stump as large as the head of a lead pencil; that the cause of that condition was that the skin had sloughed at the side of the original amputation; that in getting the stump the flap had been so short that it left the skin adhering to the bone and pulled so tight that the circulation was interfered with so that the stump was very unhealthy from tension; that, in order to make the arm able to support an artificial appliance, it would be necessary to amputate it farther back and to get a cover of good, healthy skin; and that, if it had been amputated in such a manner as to give an ample flap, it should have been healed completely within ten days and should have stayed healed. At the conclusion of the trial the court instructed the jury that it was not claimed that the defendant was responsible for any injury because the arm was · improperly treated or because there was no sufficient flap left to cover the stump. In view of this charge, no error is perceived in the receipt of this testimony. Evidence of the actual result of the injury and hence of the condition of the arm up to the time of the trial of the action was certainly competent because the character and permanence of the injury were material. Evidence to show to what extent this condition was caused by the wrong of the defendant and to what extent it was the result of some independent cause, such as the malpractice of the surgeon who treated it, was undoubtedly relevant because the defendant was liable for the former and exempt from liability for the latter. For these reasons the specifications of error which relate to this evidence cannot be sustained.

The next alleged error is the refusal of the court to instruct the jury to return a verdict for the defendant, and this presents two questions: Was there evidence sufficient to sustain a finding that the injury was caused by the negligence of the engineer? And, did the evidence conclusively show that the fireman was guilty of contributory negligence? The train upon which these men were serving consisted of an engine and 31 cars. The air was applied to the seven cars next to the engine, so that the air brakes thereon would operate, but it was cut off from the remaining 24 cars. The train stopped at a station upon a substantially level track to permit a car to be unloaded, and the fireman informed the engineer that he would go forward and clean out the ashpan; but the latter requested him to wait until he pulled the train up again and made another stop, because the engine was then too near the station. In order to clean the ashpan, it was necessary for the fireman to get in under the engine on its left side between the forward driver and the rear truck and to rake the ashes out of the pan with a long-handled hoe. It was dangerous to him to move the engine while he was under it

for this purpose. When the car was unloaded, the engineer pulled the train forward the length of six or seven cars, shut off the steam, set the air, and stopped the train with the air brakes. The fireman stepped off the engine, took his hoe from the tender, walked forward, threw his hoe under the engine, crawled in between the forward driver and the truck, and was about to rake the ashes out of the pan with his hoe when he noticed the grinding of the wheels and the backward movement of the engine, and put his hands on the rail and jumped out backward. Before he could get his left hand off the rail, the truck struck and crushed it. The engine moved back from two to four feet and stopped. There is no dispute about the facts which have been recited. But, when we come to the cause of this backward movement of the engine, the disagreement of the witnesses is direct and substantial. When the lever of an engine is put in the center notch, the engine will not move if steam is given to it; but, when the lever is forward of this notch, or, as the witnesses expressed it, in the forward motion, and steam is given to the engine, it will move forward, and when the lever is back of this notch, or in the backward motion, and steam is given to the engine, it will move backward. The engineer testified that the backward movement of the engine was caused by the recoil of the 24 cars on the rear of the train the air brakes upon which were not in operation; that, when the train stopped, these cars ran up against the engine and the seven cars in front of them, and then rebounded, the slack ran out, and they pulled the engine back. He testified that he set the air brakes, stopped the train in the ordinary way, and set his lever at the center notch; that, when the engine started back, he could not hold it, and he gave it steam; that, if he had not applied the steam, the engine would have gone back the length of three or four cars; and that during all this time the air was set and the brakes were on. On the other hand, there was testimony that it was necessary that the links under the engine should be up in order to enable the fireman to clear the ashpan, that they were up when the lever was in the backward motion and down when it was in the forward motion, and that the recoil of 24 cars at a stop when the train was moving about four miles an hour, as was this train, would not move 7 cars with the brakes on them and the air set. Heil testified that, when he had crawled in under the engine, it had stopped, the brakes were on, and the links were up, and when he got out the brakes were off. There was substantial evidence here, sufficient to sustain a finding by the jury, that the recoil of the rear cars did not cause the backward movement of the engine; that the links were up and the lever in the backward motion when Heil went under the car; that the engineer gave the engine steam and thereby caused its backward movement. And, if these were the facts, his act was a negligent one because he knew that the fireman had gone to place himself beneath the engine to clear the ashpan; and, if these were the facts, the fireman was not conclusively guilty of contributory negligence, because he had a right to presume that the engineer would not move the engine when he knew that he had gone forward to work beneath it. The evidence is not so conclusive that the engineer was free from,

or that the fireman was guilty of, negligence which contributed to the latter's injury that it was the duty of the court below to instruct the jury to return a verdict for the railway company.

The amount of damages found by a jury under the influence of passion or prejudice (Lincoln v. Power, 151 U. S. 436, 14 Sup. Ct. 387, 38 L. Ed. 224; Homestake Min. Co. v. Fullerton, 16 C. C. A. 545, 553, 69 Fed. 923, 931), and an order granting or refusing to grant a new trial, which the court has the power to make, are not reviewable in a federal appellate court (City of Manning v. German Ins. Co., 46 C. C. A. 144, 146, 107 Fed. 52, 54; Southern Pacific Co. v. Maloney, 69 C. C. A. 83, 136 Fed. 171).

The judgment below must be affirmed; and it is so ordered