## General Accident, Fire and Life Assurance Corporation, Limited v. Stratton.

(Decided September 28, 1915.)

### Appeal from Ohio Circuit Court.

1.  Insurance—Guaranty and Indemnity—Action to Recover Burglary Insurance.—In a suit to recover burglary insurance for loss to an iron safe and contents, the allegation that the safe was broken into and robbed, and that burglars drilled into and damaged the safe and the contents were feloniously taken therefrom, is sufficient to bring the claim within the policy provision against loss after entry into the safe by the use of tools or explosives.

2.  Insurance—Guaranty and Indemnity—Instructions.—Where issue was joined as to the means by which entry into the safe was effected, and the court instructed the jury that they could not find for plaintiff unless they believed that the entry was made into the safe by the use of tools or explosives directly applied thereto, a verdict rendered under this instruction and on the issue so joined is sufficient to cure a defective allegation in that regard.

3.  Insurance—Guaranty and Indemnity—Evidence.—Where the proof showed that on the morning after the robbery certain tools were found on the floor near the safe, and that two holes had been drilled into same, in one of which was a drill bit, and the door of the safe was open, it was sufficient to take the case to the jury on the question as to whether the safe was entered by means of tools or explosives.

4.  Insurance—Guaranty and Indemnity—Postmaster—Insurable Interest in Stamps.—Under a policy which specially provides for $300 insurance, "on money and uncancelled U. S. Government

postoffice and revenue stamps," and recognizes liability if they "are held by him in trust, or on commission, or sold and not removed," the postmaster had an insurable interest in the postage stamps and money order funds contained in the safe.

LIKENS & CROWE for appellant.

HEAVRIN & KIRK for appellee.

OPINION OF THE COURT BY JUDGE NUNN.—Affirming.

The appellee, Stratton, was post master at Cromwell, in Ohio County, and held a policy of burglary insurance with appellant company for $300 on an iron safe and contents situated in the post office. Stratton claimed that the safe was broken into one night in December, 1912, while the policy was in force, and postage stamps, money order funds, and cash items to the extent of $565.27, were stolen therefrom, and the safe damaged to the extent of $36, making a total loss of $601.27. Appellant refused to pay any part of this loss except $36 for injury to the safe. Suit was then brought and the jury returned a verdict for $300, the face of the policy.

On this appeal the appellant contends that its demurrer to the petition should have been sustained, and that there was no evidence to support the verdict. Other errors are urged but with less insistence.

By the terms of the policy the insurance is "for direct loss by burglary or larceny of money in curent use, uncancelled United States Government post office or revenue stamps    *    *    *    in consequence of the felonious abstraction of the same from the safe    *    *    *    after entry into such safe by such burglars effected by the use of tools or explosives directly thereupon, and for direct loss by damage caused to said    *    *    *    safe    *    *    *    by such burglarious injury (or any attempt thereat) in the total sum of $300." What are termed special agreements are then stated in the policy in finer print. The effect of these special agreements is to further limit liability of the company, and, among other things, they provide against liability for loss of money unless it belongs solely to the assured, and for loss of stamps unless they belong to the assured or are held by him in trust or on commission.

The petition sets forth that on the night in question, "The same safe named and described in said schedule which was situated in the post office    *    *    *    was

*broken into and robbed* and the following property was feloniously taken therefrom. (The property is then described as United States postage stamps, postal funds, and money order funds. The amount of each item specified. Totaling $565.27.) That the *burglars also drilled into and damaged his safe* worth $36, making the total loss sustained by this plaintiff in the sum of $601.27.''

The allegations that the safe was broken into and robbed, and that the burglars drilled into and damaged his safe, and that the contents were feloniously taken therefrom, in our opinion, are sufficient to bring the claim within the provisions of the policy, and on demurrer, render the company liable because of its contract of insurance against loss after entry into the safe by the use of tools or explosives. To say that it was broken into and drilled into necessarily means that the entry was accomplished by use of explosives or tools.

When the demurrer was overruled appellant answered and says, ''Entry was not made into the safe by the use of either tools or explosives.'' This negative averment was denied in appellee's reply, and the statement is there further made that ''burglars did drill into said safe and also managed, in some way, to work the combination of the safe after it had been drilled into, and took from the safe the property named, etc.'' On the issue thus joined as to the means by which entry into the safe was effected, the court instructed the jury that they could not find for the plaintiff unles they believed that the entry was made into the safe ''by the use of tools or explosives directly applied thereto.'' Necessarily a verdict rendered under this instruction and on the issues so joined is sufficient to cure the defect in the petition, even if it be admitted that it is defective. But appellant insists upon a contrary conclusion and relies upon the case of Hall v. Huffman, 159 Ky., 72. In that case a verdict and judgment was rendered against the petitioner, and, as there said, on her appeal, the verdict could not be held to cure the defect in her petition because the verdict was adverse to her. In the case at bar the verdict was for the petitioner.

Appellant says that there was no evidence ''that any burglar's tools could have effected the opening of the safe,'' and calls attention to the fact that the combination lock was not injured. The evidence shows that when appellant went into the post office on the morning after

the burglary he found that some one had broken into the building through a window, and that two holes had been bored into the top of the iron safe. A drill bit was left in one of the holes. The safe door was open and the contents gone. The drill holes went through the iron casing and to some extent into the asbestos lining. Whether by means of these holes the combination lock was or could be reached by the burglars, or in fact the precise method of their entry into the safe, the evidence does not show. The appellant argues that the safe was either left unlocked by appellee when he left the store that night, or else after locking it, he failed to turn the combination, and that after the burglars had drilled the two holes they discovered that the combination was not turned, and then they opened the safe without having to use tools or explosives on the door. The only evidence as to the safe being locked was that given by the appellee. He said that it was his custom to lock the safe every night when he left the store, and because of the custom he felt sure he had done so on the night in question, although he did not remember the fact. This, however, is some evidence that the safe was locked; that holes were drilled in the safe is more evidence that the door was locked. The jury found as a matter of fact that the safe was entered by means of tools or explosives, and we are of the opinion that the evidence is sufficient to warrant that finding.

Appellant argues that the policy was procured by fraud or misrepresentation in that he stated in his application that he had never suffered loss through burglary. Appellant did not offer any instruction on this proposition, and we do not believe there was any evidence upon which to base such an instruction anyhow. It appears that several years prior thereto a money order form book was mislaid or stolen. There is no evidence that either the safe or store was broken into, and there is no pretense that the money order form book was taken from the safe, or as a result of burglary.

Another ground for a new trial is misconduct of the jury in taking to the jury room the petition and exhibits attached thereto. Appellant's attorneys filed an affidavit saying that this was done without their consent. The affidavit is not referred to or made a part of the bill of exceptions. Therefore it does not appear from the bill of exceptions whether these papers were with the jury, or, if so, upon what condition they had them. In other words,

·if there was error of the court or jury in this matter, the record does not show it.

Appellant insists that the federal government was the owner of the postage stamps and money order funds, ·and that, therefore, Stratton, the post master, did not have an insurable interest and can not recover for their loss. The post master was charged with these stamps and funds by the government and is held accountable therefor. The policy specially provides for $300 insurance "on money and uncancelled U. S. Government post office ·and revenue stamps," and liability is recognized if they, ."are held by him in trust, or on commission, or sold and ·not removed." In view of these facts, we are of the opinion that the post master had an insurable interest, and the policy recognized this fact.

For these reasons the judgment is affirmed.