Appeal from Third District

PALACE LAUNDRY CO. v. ROYAL INDEMNITY CO.

No. 4050.   Decided March 17, 1924.   (224 Pac. 657.)

1. INSURANCE—EVIDENCE OF UNLAWFUL ENTRY OF SAFE, BY USE OF TOOLS AND VISIBLE MARKS THEREOF ON THE SAFE, HELD SUFFICIENT TO GO TO JURY. Evidence of there having been an unlawful entry of a safe by the use of tools, and of there being visible marks thereof on the safe, necessary under burglary policy for recovery of indemnity for the money taken, though meager and contradicted, *held* substantial and sufficient to go to the jury.

2. TRIAL—NO REVERSAL FOR IMPROPER QUESTIONS TO ADVERSARY'S WITNESSES. Propounding improper or useless questions to adversary's witnesses is not ground for reversal, on the ground of misconduct of counsel.

Appeal from District Court, Third District, Salt Lake County; *A. R. Barnes,* Judge.

Action by the Palace Laundry Company against the Royal Indemnity Company. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Gustin & Pence,* of Salt Lake City, for appellant.

*M. E. Wilson* and *Edward Moran,* both of Salt Lake City, for respondent.

FRICK, J.

The plaintiff recovered judgment against the defendant upon a burglary insurance policy, and the defendant appeals.

The plaintiff, in its complaint, alleged the issuance of the insurance policy, the burglary into its laundry building, and that an iron safe used therein had been broke into by the use of force and violence and that money, stating the amount, which was in the safe was stolen therefrom; that

proof of loss had been duly made and served; and that the defendant had refused to pay the loss or any part thereof.

The defendant filed its answer to the complaint in which after admitting the issuance of the insurance policy, a copy of which was attached to the answer, it denied that the iron safe had been opened by the use of force or violence, and denied its liability under the policy. While the defendant averred the foregoing facts affirmatively, it nevertheless could have proven all it averred in its answer under a general denial, and hence it is not necessary to refer to the facts as they are averred in the answer.

The case was tried to a jury which returned a verdict in favor of the plaintiff, upon which judgment was entered, from which this appeal is prosecuted.

The insurance policy contained the following provision:

"That if there shall occur * * * a burglary committed by any person or persons who shall have made an unlawful entry into the safe or vaults containing the property insured by using tools, explosives, chemicals or electricity directly upon the outer doors or walls thereof, of which entry there shall be visible marks upon such safes, or vaults, * * * then the company will indemnify the insured for the loss of the property," etc.

There are numerous other conditions in the policy, which however, are not material here.

The principal contention of the defendant is that the evidence is insufficient to show that the money which was alleged and proved was taken from the safe was taken from it by the use of any tools, explosives, chemicals, or electricity; that the evidence is likewise insufficient to show that there was any visible marks upon the safe from which the money was taken; and that the district court erred in refusing to direct the jury to return a verdict in favor of the defendant.

The evidence leaves little room for doubt that the building in which the safe was located was forcibly and burglariously entered and that the entry was effected by the use of force with some tool or tools. Under the terms of the policy, however, it was not sufficient merely to prove that the building in which the iron safe was placed was entered by force and

Appeal from Third District

violence and that there were some visible marks upon the building or door and windows thereof indicating the use of force and violence in gaining admission to the building. Unless there is some evidence, therefore, from which the jury was authorized to find that the entry into the safe was effected by the use of tools, explosives, chemicals or electricity, or by the use of one or more of those agencies, of which use there were some visible marks upon the safe, the plaintiff must fail. While the evidence respecting these matters, to the mind of the writer, is meager and inconclusive, yet there was some substantial evidence from which the jury could infer and find that the safe was broken open by the use of some tool or tools and that there were some visible marks upon the same indicating that it was opened by the use of such tool or tools. The manager of the plaintiff, quoting from the bill of exceptions, testified as follows:

"Q. Coming to the safe, what was the condition of the safe when you first saw it on this Monday morning? A. There was a little tin box that Miss McRae kept some of her change in; it was on top of the safe, and several matches, ten or a dozen, scattered around on the floor, some on top of the safe and some in this box. Q. Any marks on the safe? A. The twist knob that you work the combination with was battered up a great deal, very badly scarred up. Q. Any other marks that you noticed? A. No; I can't say there were. Q. Just what was battered up or scarred? Explain to the jury as well as you can. A. That whole knob is just covered with what looked to me like small tool marks where you take hold of it with your hands, all around the outside of that knob piece as if it had been caught with a Stillson wrench. * * * Q. Later on after the Monday morning I will ask you whether you had any experience with the combination of this safe as to whether it worked properly or not? A. It never did work right again, until we had it fixed after the burglary. Q. What was the matter with it after this event? You say it didn't work right. A. About three or four times a week Miss McRae would call me up, if I didn't report at the office, for me to come down quick; she hadn't been able to get the safe open yet. Q. Would you have any difficulty in opening it? A. I have worked that past the combination as much as 50 times to get it open, sat there for two hours and a half one morning. Q. Had you ever had that difficulty with it prior to this extraction of the money? A. I never had."

In addition to the foregoing the young lady referred to

by the manager testified that she found a "knob" on the floor the morning after the burglary which was taken from one of the hinges of the safe. While this circumstance standing alone was perhaps of minor importance, yet taken in connection with the other evidence the jury had a right to consider it as having some probative force. Then again, the safe expert who was called in after the burglary to examine and to repair the safe testified that the dial on the knob which was on the safe door had some time been cracked and soldered. True, the witness said that the crack and soldering indicated that both had existed there some considerable length of time. He, however, also said that the old soldering had been what he called "recracked." When he was asked by defendant's counsel whether the recracking might not have been caused by a defect in the original soldering, the witness answered:

"Well, not exactly, because it was soldered up pretty heavy all the way around; it would have taken some kind of a blow there to have cracked it the way it was broken."

It is true that some other witnesses who saw the safe soon after the burglary say that they did not notice the marks testified to by the manager. The mere fact that they failed to notice them, however, was not conclusive. The jury had a right to believe the testimony of the manager and the other evidence which indicated the use of force and violence upon the safe. We are forced to the conclusion, therefore, that there was some substantial evidence showing that the defendant was liable under the policy. The following cases support our conclusion, namely: *Maryland Casualty Co.* v. *Bank,* 76 Neb. 314, 107 N. W. 562; *National Surety Co.* v. *Silberberg Bros.* (Tex. Civ. App.) 176 S. W. 97; and *Goldman* v. *New Jersey Fidelity, etc., Co.* (Mo. App.) 183 S. W. 709. All of the foregoing cases cover insurance policies similar to the one in question, and in all of them the sufficiency of the evidence to support the findings against the company is considered.

It is next contended that the court erred in denying defendant's motion for a new trial. What has already been said sufficiently answers this contention.

It is next insisted that the judgment should be reversed for the misconduct of plaintiff's counsel in propounding a certain question to one of defendant's witnesses.        2 If judgments were reversed because opposing counsel propound improper or useless questions to his adversary's witnesses, few, if any, judgments could be permitted to stand. The contention seems trivial, and if the case had not been close upon the evidence it never would have been suggested. The contention is, however, without merit.

From what has been said it follows that the judgment should be, and it accordingly is, affirmed. Respondent to recover costs.

GIDEON, THURMAN, and CHERRY, JJ., concur.

WEBER, C. J., did not participate herein.