## Husch Brothers v. Maryland Casualty Company.

(Decided October 13, 1925.)

### Appeal from Jefferson Circuit Court (Common Pleas, Third Division).

1. Appeal and Error—If First Verdict Erroneously Set Aside by Trial Court, it should be Reinstated.—If first verdict rendered was erroneously set aside by trial court, it should be reinstated, and appellate court would, upon reversal of judgment appealed from, order reinstatement thereof.

2. New Trial—Court Properly Set Aside Verdict and Granted New Trial, where Pleadings were at Variance with Terms of Insurance Policy and Verdict of Jury Not Clear.—In an action on a fire insurance policy, where verdict was rendered for plaintiff, trial court properly set verdict aside and granted new trial, where pleadings were at variance with terms of policy, and verdict of jury was not clear as to amount of award made.

3. Insurance—Question for Jury whether Marks Found on Grating, Window Sill, and Wall were "Conclusive Visible Evidence" of Use of Tools in Forcing Entrance for Purpose of Burglary Within Terms of Insurance Policy.—In action on burglary insurance policy, it was a question for jury whether marks found on grating, window sill, and wall near window, through which it was alleged burglars entered, were "conclusive visible evidence" of use of tools in forcing entrance in premises for purpose of burglary, within terms of insurance policy requiring that there shall be "conclusive visible evidence" upon premises at place of entry of forcible and violent entrance.

4. Insurance—Meaning of Term "Conclusive Visible Evidence" in Insurance Policy Determined by Looking at Whole Contract and its Evident Purpose and End to be Attained.—Where burglary insurance policy provided there should be conclusive visible evidence upon premises at place of entry of force and violence used

to effect entrance, the meaning of the term "conclusive visible evidence" should be determined by looking at whole policy and its evident purposes and ends to be attained.

5.   Insurance—Reasonable Construction to be Placed on Policy, and if Susceptible of Two Constructions, One Favorable to Assured will be Adopted.—Reasonable construction to be placed on policy, and if susceptible of two constructions, one favorable to assured will be adopted.

6.   Insurance—Evidence Held to Warrant Submission to Jury of Whether or Not there was Conclusive Visible Evidence of Entry by Force and Violence.—In action on insurance policy, evidence held sufficient to go to jury on proper instructions on question of whether or not there was conclusive visible evidence of entry by force and violence for purposes of burglary within meaning of insurance policy.

7.   Insurance—Whether Burglary Policy Covering Suits Included Ladies' Dresses a Question for Jury.—Whether an insurance policy which covered suits also covered ladies' dresses held a question for jury.

8.   Insurance—Whether Burglary was an Inside Job Question for Jury.—Whether burglary was an inside job held, under evidence and deductions to be drawn therefrom, a question for jury.

PETER, LEE, TABB & KRIEGER for appellant.

EUGENE R. ATTKISSON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

On November 22, 1920, the appellant, Husch Brothers, were engaged in the retail mercantile business in the city of Louisville, and on that date obtained from the appellee, Maryland Casualty Company of Baltimore, a general policy of burglary insurance in the sum of $5,000.00, with a standard mercantile rider attached thereto. The character of business carried on by the assured as described in the policy was "Suits, millinery and furs."

Appellant, Husch Brothers, assert that on the night of June 14, 1921, while the policy was in force, suits and furs to an actual cash value at the time of $5,000.00 were lost directly by burglary from its store, and that it immediately notified the insurance company of the loss and asked an adjustment. The insurance company denied liability and declined to pay the alleged loss; thereupon this suit was brought by Husch Brothers against the insurance company to recover on the policy. Issue being joined a trial was had resulting in a verdict for the full

amount of the policy in favor of Husch Brothers. The lower court granted a new trial and another trial was had, the court peremptorily instructing the jury to find and return a verdict for the defendant, the insurance company.

Appellant, Husch Brothers, are appealing, asserting the trial court erred in granting a new trial, and in setting aside the verdict and judgment entered on the first trial, and also insisting that the verdict and judgment in the second trial should be set aside and the first verdict and judgment substituted therefor, and if this cannot be done then the judgment rendered on the second trial should be reversed and Husch Brothers granted a new trial.

Appellee insurance company insists that the judgment should be affirmed; that the evidence of appellant was not sufficient to establish its right of recovery under the terms of the policy, and that the court properly directed a verdict for it. The insurance company also insists that the trial court properly set aside the judgment on the first trial.

If the first verdict was erroneously set aside by the trial court it should be reinstated, and this court would upon the reversal of the judgment appealed from order reinstatement of the first judgment. Strode's Executor v. Strode, 194 Ky. 665. We have examined the record on the first trial and find that there were several more or less important errors. For instance, the pleadings omitted the word "conclusive" from the expression in the policy "conclusive visible evidence." The averments of the petition were at variance with the terms of the policy in that dresses were alleged to have been lost, whereas the policy indemnified against the loss of suits, millinery and furs, only, there being no averment that the word "suits" as employed in the policy embraced "dresses." The verdict of the jury upon the first trial read:

"We, the following jurors, find for the plaintiff for the full amount asked."

The amount prayed in the petition as amended was $5,000.00, but the evidence showed that the management of the company claimed at that time to have lost merchandise of the value of $4,619.87. The verdict of the jury was not, therefore, clear. It was not certain whether the jury by its verdict meant to award the plaintiff

$5,000.00 or only the amount which the evidence of one witness, testifying for the merchant, stated the total of the loss to be. There were yet other errors. For these the trial court set aside the verdict and judgment and awarded a new trial, and this we find under the facts and circumstances was proper.

The next question which addresses itself to the court on this appeal is the correctness of the ruling of the trial court upon the second trial in directing the jury to find and return a verdict for the insurance company over the objection of appellant, Husch Brothers. In order to determine this question we must look to the terms of the policy and examine the evidence. The rider attached to the policy contains this provision:

"STANDARD MERCANTILE RIDER.

"(Open Stock)

"CLAUSE 1. FOR ALL DIRECT LOSS BY BURGLARY of any of the merchandise described in the schedule, occasioned by its felonious abstraction from within the premises actually occupied by the assured and described in the schedule, and of any of the furniture and fixtures therein, by any person or persons (except the assured or any of his employes or other persons lawfully in said premises) who shall have *made forcible* and *violent entrance* thereinto, when the said premises are not open for business by the *use of tools, explosives, chemicals* or electricity *directly* thereupon, of which *force* and *violence* there shall be *conclusive visible evidence* upon the *premises at the place of entry*."

The third clause of the rider concludes with this phrase: "Of which force and violence there shall be conclusive visible marks." It is insisted by appellee, insurance company, that the evidence introduced by appellant, Husch Brothers, was not sufficient to warrant the court in submitting the case to the jury under that clause of the policy which provides "of which force and violence there shall be conclusive visible evidence upon the premises at the place of entry," it being argued that there was no evidence of probative value to establish that upon the premises at the place of entry of the alleged burglar there was "conclusive visible evidence" that a burglar had made forcible and violent entrance into appellant's premises; and, further, that the evidence failed to show

that the premises were entered during the night time when the store was not open for business, and by the use of tools, explosives, chemicals or electricity, as provided in the policy.   The evidence upon these subjects is not wholly satisfactory although we think it sufficient to carry the case to the jury.   To establish that the burglars entered with force and violence and left on the premises at the place of entry conclusive visible evidence of the use of tools in the breaking and entry, the manager of the company testified in answer to the question:

"Q.   Then what was done?   A.   I looked around the store to find out the way in which they could get in, and we investigated every window, every lock, every door, and naturally when we found the skirt in the alleyway, I figured they got in through that window, and after I examined the premises I found that is the way they did get in, for the reason there was marks on the grating that covers the window from the first floor, iron bars; it is a grating to keep people from getting in there, that is what it is put there for—there was marks—footprints—on these gratings as you go up over the window there on the first floor; there is a telephone cable that leads up in the corner of the building about like this; right up in the corner here is this long window which has these iron bars over it, there was footprints all over those bars, that is just where they went up, you could see it very plain and distinct because the grating was painted red, naturally been there a few years there was a certain sediment or coat of dust, whatever you might want to call it—soot—and every place you could see where they stepped, there was a mark, you could see, the red paint would just simply shine through that.

"Q.   Was that fresh?

"A.   Assuredly, and this cable coming up to the second floor was pulled away, the plastering where the bolts or cleats, whatever you call them, holds this cable into the mortar—into the bricks—was pulled out there, were fresh: you could see it. Right above the bars on the first floor there is bricks, then comes the window on the second floor; on those bricks above the bars up to the sill on the second floor was marks as if toes had scratched there, you

see; then on the sill on the second floor there was fresh marks and every indication, and I know positively that they got in through this window with a screw driver or chisel, whatever they could have used, that I don't know, but you could see the scratches all along this sill. On the window sash there is a little flange comes down over—the sash fits down over the sill, I guess you would call it a rain strip or water strip, whatever it is there was marks on the bottom of that as if you would take something and prize that.''

In answer to the question, ''Nothing to indicate it had been opened?'' the witness answered:

''Well, there was prints seen or noticed on the window sill, whatever it might be called, just beneath the window—that something had occurred there that night.

''Q. You mean the window frame below? A. Yes, sir; sill. It might be the window frame, whatever it might be called, just underneath where the window lowers.

''Q. What did you do then? A. Mr. Thome, I believe, was there, and he and I discovered that the—I don't know what you call it—telephone.

''By the court: Cable, you are talking about?

''A. Telephone cable was all pulled out from the wall here, was all pulled out from the wall; this cable here comes up besides the grating here was all pulled out from the wall, I mean by the second floor window.

''Q. Did you find anything else? A. And on these lower bars I noticed looked like somebody's feet had been on there, knocked the dirt off and the red paint under this showed; the thing was formerly painted red, looked like it had been freshly made; we come to the conclusion—

''Q. Never mind about your conclusions; where that cable had been pulled out, state whether or not the plastering or the mortar which had been pulled out was fresh or not? A. Yes, sir, it was.''

What would be conclusive visible evidence of force and violence by tools in making an entrance into a store, window or door, is rather hard to define with precision. To the mind of one person certain marks upon the

window or door might be regarded as conclusive visible evidence of the use of tools in breaking and entering a house, while to another person equally as intelligent it might not so appear. It, therefore, becomes a question of fact for the determination of the jury from all the evidence whether the marks found upon the grating, window and window sill and on the wall near the window through which it is alleged the burglars entered, were conclusive visible evidence of the use of tools in forcing entrance into the premises of appellant for the purpose of burglary. If a hole had been cut through the window sill of appellant's store it would not have been conclusive visible evidence, in the usually accepted meaning of the term, of the entry of burglars into the store, but it would have been evidence that some one had been attempting to manipulate the window and make entrance, and, taken in connection with other facts such as the loss of merchandise from the store, would have been sufficient to have justified a jury in finding as a fact that the marks and breaking were conclusive that the store had been entered by burglars through that window. In arriving at the meaning of the term "conclusive visible evidence," as employed in the policy, we must look to the whole contract and its evident purpose, and the ends to be attained. A reasonable construction should be placed on the terms of the policy, and where the provisions of a policy of insurance are reasonably susceptible of two constructions, consistent with the object of the obligation, one favorable to the assured and the other favorable to the assurer, the former will be adopted. The expression "conclusive evidence" must have been used in the contract for the purpose of making effective and of carrying out the intention of the parties to make a contract of burglary insurance which would in certain specified events, save the insured harmless against loss by burglary, upon reasonable proof of the fact that a burglar or burglars had entered the premises at night time when the store was not open for business, by the use of tools, explosives, chemicals or electricity, and left visible evidence of the breaking upon the premises at the place of entry into the house. The raising of a latch or the moving of a bolt would require some force and violence within the meaning of the policy, and marks, tracks, stains and fingerprints would, within the meaning of the policy, conceivably be conclusive visible evidence of force and violence used in raising a latch or moving a

bolt in making an entrance into the premises. Undoubtedly within the meaning of the policy a breaking into the building is conclusively proven when it is shown by such evidence as standing alone and uncontradicted would reasonably satisfy the mind as to the fact. It is, therefore, for the jury to say from the evidence copied above and such other as appellant may see fit to introduce to establish force and violence in the breaking and entry of its store, whether the same is conclusive visible evidence of force and violence upon the premises at the place of entry, within the meaning of the contracting parties; and, we therefore conclude that the evidence introduced upon the trial was sufficient to have warranted the trial court in submitting the question of fact to the jury by proper instruction.

It is next insisted by the appellee, insurance company, that the word "suits," as employed in the policy insuring against loss by burglary of "suits, millinery and furs" does not include ladies' dresses. Appellant, Husch Brothers, insist that the word "suits" does include ladies' dresses, and on the last trial, after the pleadings had been amended so as to aver that the word "suits" did embrace ladies' dresses, it was stipulated between the parties that the appellant, Husch Brothers, would be able to prove by more than one witness that the word "suits" as commonly employed and used by merchants engaged in handling such merchandise, embraced and included "ladies' dresses," and further that the defendant, insurance company, would be able to prove by a like number of witnesses engaged in the same line of work that the word "suit" did not embrace or include ladies' dresses, and it was further stipulated that this question of fact should be submitted on another trial to a jury or court as though the witnesses had so testified. This made a clear issue of fact which addressed itself to the jury. Upon this point the trial court was not justified in directing a jury to find a verdict for the appellee.

Appellee also insists that if the burglary occurred at all, it had all the appearances of an inside job. This, of course, depends upon the evidence and the deductions to be drawn therefrom and the view the jury may take of the facts.

From what has been said it follows that the trial court erred on the last trial to the prejudice of appellant,

Husch Brothers, in directing a verdict for the insurance company, hence the judgment is reversed for new trial consistent with this opinion.