## ÆTNA CASUALTY & SURETY CO. v. RELIABLE AUTO TIRE CO.

### No. 9317.

Circuit Court of Appeals, Eighth Circuit.

April 16, 1932.

S. P. McChesney and Mat J. Holland, both of St. Louis, Mo. (Edward H. Robinson, of St. Louis, Mo., on the brief), for appellant.

A. B. Frey, of St. Louis, Mo. (Max Sigoloff and P. H. Cullen, both of St. Louis, Mo., on the brief), for appellee.

Before STONE, KENYON, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

In this case the appellee as plaintiff brought action against the appellant on a

policy of burglary insurance covering a stock of goods consisting among other things of automobile tires. The parties will be referred to as they appeared in the lower court. The petition was in conventional form, alleging that a felonious entry had been made into the premises of the plaintiff at 3117-3119 Locust street, St. Louis, Mo., and that merchandise in the value of $5,439.45 had been taken therefrom.

The answer admitted the execution of the policy and the payment of the premium, but denied generally the other allegations of the petition. It specifically denied that a burglary had occurred, and set up by way of affirmative defense that under the conditions of the policy it was incumbent upon the plaintiff to keep books in such a manner that the exact amount of the loss could be accurately determined by the insurer, and that this had not been done, and that no loss could be accurately determined from the books and accounts of the plaintiff as kept. It also set up as an affirmative defense a breach of a condition of the policy requiring the insured to permit representatives of the insurer to make such inspection of the premises at a time when an inspection was necessary, and a breach of a condition of the policy requiring the insured to furnish, when requested by insurer, an inventory of the entire stock covered by the policy; it being alleged that the insured had furnished an inventory of the stock located upon the second floor only, thus impeding the insurer's investigation. Plaintiff's reply put in issue these affirmative allegations of the answer, and pleaded a waiver of these requirements.

The case was tried to a jury, and at the close of all the evidence defendant moved for a directed verdict. The record does not affirmatively show what ruling was made on this motion, but, as the court sent the case to the jury under instructions, it is inferred that the motion was overruled. No exception is shown to this ruling of the court. The jury returned a verdict in favor of the plaintiff for the full amount claimed, and from the judgment entered thereon this appeal has been perfected.

Reversal is here sought upon three grounds: First, that the evidence was insufficient to establish that a burglary had been committed; second, that the books and accounts of plaintiff were not kept in such a manner as to comply with the provisions of the policy requiring the books to be so kept that the exact amount of the loss could be accurately determined therefrom by the defendant; and, third, that the court erred in denying defendant's motion for a new trial.

Plaintiff was engaged in the retail sale of automobile tires at 3117-3119 Locust street, St. Louis, Mo. The building had formerly been an old residence, which had been remodeled and a retail salesroom erected in front of it, flush with the sidewalk, and extending out to the building line, making the building somewhat irregular in shape. Toward the rear of the building there was a mezzanine floor about halfway between the first floor and the ceiling. This mezzanine floor was separated from the salesroom by an iron grating which was kept padlocked. Tires were stored on the main floor, on the mezzanine floor, and on the floor above the mezzanine, which is called in the record the third floor; the mezzanine floor being called the second floor. There was a fourth floor above the third, on which no tires were stored. The second, third, and fourth floors were the floors of the old residence building, and they did not extend out in front as far as the salesroom which, as before observed, in remodeling the building was constructed in front of the old building. On the fourth floor there was a large window on the north side, overlooking the parking lot. This window had window glass in it, and there were a number of window spaces or openings along the east wall of this fourth floor without window glass. These glassless windows looked out upon the roof of a one-story building adjoining. This one-story building, located to the east of plaintiff's building, abutted an open court or parking lot. Plaintiff's building was protected on the first, second, and third floors by a burglar alarm system. The windows or spaces looking east from the fourth floor were protected by 2"x4" cross bars running across the windows, and some of them had upright boards covering portions of the open window space.

On Saturday night, February 11, 1927, the building, including the iron grating between the mezzanine floor and the main floor, was properly closed and locked. This was apparently about 9 o'clock at night. About 10:30 p. m. a police officer making his rounds tried the outer door and found it locked, and another police officer tried the front door and the garage door at 11 o'clock, and found them both locked. On Sunday morning, February 12, at about 8 o'clock, police officers passing through the alley near or adjoining this building found that the garage door at the rear of the building was open; that the

hasp and lock on this door were broken and lying in the alley. Suspecting burglary, these police officers examined the premises and found an extension ladder with its base on the flat roof of the one-story building to the east of plaintiff's building, the top of this ladder reaching to within three feet of the lower sill of one of the glassless windows on the fourth floor. Further investigation disclosed that the front door of the premises was still locked; that the iron grating between the first and second floors was locked, but that on the fourth floor the window immediately above the top of the extension ladder had the lower wooden cross bar sawed in two near the south side of the window, and this timber so sawed was still attached to the side of the window, but was pushed back toward the inside. It had been freshly sawed, and there was sawdust on the window sill. The northwest window of the fourth floor, the one referred to as containing window glass, was open, and there were tires standing on the floor near it. There were tire wrappings scattered about on the fourth floor, and some of these wrappings were found on the roof of the one-story building on which the ladder was resting, as well as in the courtyard below. The opening in the window space from which the bar had been sawed was wide enough to put a tire through, and the other window over on the northwest corner was likewise wide enough to put a tire through. There were fresh looking tire wrappings under both of these windows. There was evidence that large quantities of tires had been recently removed from the third floor. A policeman testified that he saw vacant marks in the dust where tires had been recently removed, and there were empty bins or places where tires had been stored. The witness said: "I could see places where they had been piled and apparently removed, from the marks in the dust, and rings."

There were footmarks on the stairway leading from the third to the fourth floor. It is the claim of plaintiff that burglars entered through the windows on the fourth floor so as to escape the burglar alarm system, and that they carried the tires from the third floor to the fourth floor and removed them through the fourth floor windows.

█ In the absence of proper exception to the ruling of the court in denying defendant's motion for a directed verdict, the question of the sufficiency of the evidence is not properly presented by this record. It is suggested, however, that the failure of the record to so show is simply a typographical error. If so, however, it was incumbent upon the defendant to have the error corrected, but, as the defect has not been urged by the appellee, we are disposed to consider the question, notwithstanding the defective condition of the record.

█ By the terms of the policy, the defendant agreed to indemnify plaintiff "for direct loss by burglary of merchandise, usual to the assured's business as described in the warranties hereof, from within the assured's premises by any person or persons making felonious entry into such premises by actual force and violence when the premises are not open for business, of which force and violence there shall be visible marks made upon the premises at the place of entry by tools, explosives, electricity or chemicals." The policy does not by its terms require that the burglary be established by technically direct proof. Certainly, in the absence of such a requirement in the policy, the burglary could be proved by circumstantial evidence. The act of burglary is in its nature rarely susceptible of direct proof in the technical sense of that term. The visitation of burglars is not heralded from the housetops; they issue no invitations to their functions; they leave behind them no calling cards giving their names and addresses; they furnish no details or plans showing the methods used in effecting the burglary; nor do they provide the victim with an inventory of the property taken. In fact, if burglars did these things, there would be no occasion for burglary insurance. Such facts must ordinarily be established by circumstantial evidence, and liability under this policy is not limited to such burglaries as can be proven by eyewitnesses. Mere proof of loss of property covered by the policy of insurance would confessedly have been insufficient to entitle plaintiff to recover, but, in addition to the proof of the loss of merchandise from the store, there was proof of circumstances which, if believed by the jury, warranted the conclusion that plaintiff's premises had been feloniously entered in the nighttime by actual force by means of tools and the property stolen therefrom. These circumstances have already been related, and, under the authorities, constituted, in our opinion, substantial proof of the burglary claimed. Miller v. Massachusetts Bonding & Ins. Co., 247 Pa. 182, 93 A. 320, L. R. A. 1915D, 615; Kroloff v. Southern Surety Co., 197 Iowa, 1244, 198 N. W. 629; Garner v. New Jersey Fidelity & Plate Glass Ins. Co. (Mo. App.) 200 S. W. 448; Stern v. Employers' Liability Assur. Corp. (Mo. App.)

249 S. W. 739; Hayward v. Employers' Liability Assur. Corp., 214 Mo. App. 101, 257 S. W. 1083; Goldman v. New Jersey Fidelity & Plate Glass Ins. Co. (Mo. App.) 183 S. W. 709; Husch Bros. v. Maryland Casualty Co., 211 Ky. 97, 276 S. W. 1083; Fidelity & Casualty Co. v. Wathen, 205 Ky. 511, 266 S. W. 4, 41 A. L. R. 844; Sowden v. United States Fidelity & Guaranty Co., 122 Kan. 375, 252 P. 208; Northern Assur. Co. v. Gross (Tex. Civ. App.) 1 S.W.(2d) 369; National Surety Co. v. Murphy (Tex. Civ. App.) 215 S. W. 461; National Surety Co. v. Chalkley (Tex. Civ. App.) 260 S. W. 216; General Accident F. & L. Assur. Corp. v. Stratton, 165 Ky. 754, 178 S. W. 1060; Emery v. Ocean Acc. & Guarantee Co., 209 Mich. 295, 176 N. W. 566; Reed v. American Bonding Co., 102 Neb. 113, 166 N. W. 196, L. R. A. 1918C, 63; T. J. Bruner Co. v. Fidelity & Cas. Co., 101 Neb. 825, 166 N. W. 242; Moskovitz v. Travelers' Indemnity Co., 144 Minn. 98, 174 N. W. 616; Fidelity & Cas. Co. v. First Bank, 42 Okl. 662, 142 P. 312; Palace Laundry Co. v. Royal Indemnity Co., 63 Utah, 201, 224 P. 657; Cahn & Wachenheim v. Fidelity & Cas. Co., 157 La. 238, 102 So. 320.

From the evidence, which we must assume the jury believed, the jury might very properly have determined, not only that the plaintiff's premises had been burglarized, but that the tires as claimed by the plaintiff had been stolen from the building. The contention of appellant that the evidence to establish the burglary was so at variance with the physical facts as to be unbelievable and impossible cannot be sustained. While the argument in support of this contention might appropriately have been addressed to the jury, it is not persuasive here. It is not the province of this court to weigh the evidence, but only to determine whether or not there was substantial evidence to sustain the verdict of the jury. Illinois Power & Light Corp. v. Hurley (C. C. A.) 49 F.(2d) 681; Wharton v. Ætna Life Ins. Co. (C. C. A.) 48 F.(2d) 37; Concordia Fire Ins. Co. v. Commercial Bank (C. C. A.) 39 F.(2d) 826; Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879; Michigan Central R. Co. v. Mix, 278 U. S. 492, 49 S. Ct. 207, 73 L. Ed. 470.

Considering as true the testimony produced by the plaintiff on this issue, we are clear that it was substantial and of such character that reasonable men might have reached different conclusions. It therefore raised an issue for the jury, unless, as contended by defendant, plaintiff's right to recover was precluded by its failure to keep its books and accounts in such a manner that the exact amount of the loss could be accurately determined therefrom. The policy provided that, "unless books and accounts are kept by the assured and are kept in such manner that the exact amount of loss can be accurately determined therefrom by the company," there could be no recovery. In submitting this issue to the jury, the court in its instructions said: "The defendant has alleged that plaintiff violated said provision of said policy, in that the defendant claims that plaintiff so inaccurately kept its books of account that the accurate amount of loss, if any, could not be accurately determined therefrom. The court charges you that by the said provision of said policy, plaintiff was not required to keep such a set of books as would be kept by an expert bookkeeper or accountant. All that was required of the plaintiff was that it keep such books, invoices and data by which the amount and value of the goods in the store at the time plaintiff alleges it sustained its loss could be reasonably ascertained. Now, if you find that the plaintiff's books were not kept in such a manner that the accurate amount of loss or damage sustained could be ascertained, then the plaintiff has not complied with this provision of the policy and is not entitled to recover, even though you may believe that there was a burglary of the plaintiff's premises."

The defendant took no exception to the court's instructions, and as to it the instructions became the law of the case on this appeal.

Miss Abrams, plaintiff's bookkeeper, identified a complete set of books, and categorically testified that they were correctly kept by her in the due course of business. These books were produced in court, tendered to and were subject to examination by defendant's counsel, and were all offered in evidence. They are not reproduced in the record, and appellant is urging that they were not properly kept, but at the same time does not reproduce them nor their substance in the record, but relies upon certain testimony of the witness Miss Abrams given on cross-examination, as destroying the evidentiary value of the books and records as kept by her. The court properly instructed the jury that all that was required of the plaintiff was a substantial compliance with the above-quoted provision of the policy relative to the keeping of books and records. New Amsterdam Casualty Co. v. Iowa State Bank (C. C. A.) 1

F.(2d) 196; New York Underwriters' Fire Ins. Co. v. Malham & Co. (C. C. A.) 25 F. (2d) 415; Liverpool & L. & G. Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460.

The books consisted of a general ledger or control ledger, bills payable, a journal, and a day book. These books, according to the testimony of the bookkeeper, contained a record of all transactions conducted by plaintiff in its business, and were kept in the approved manner for the keeping of such books by business concerns. In addition to these books, plaintiff took an inventory each year covering all its merchandise, both at its place of business at 3117-3119 Locust street and at its warehouse. In addition to this a separate inventory of the merchandise on each floor was kept and a card index inventory of all its merchandise in its warehouse; the merchandise in its warehouse not being covered by the policy in question. Miss Abrams testified that she delivered this card index inventory to the two auditors sent by defendant to plaintiff's place of business to check its loss. These auditors took the card index with them and never returned it. Miss Abrams testified that she was able to determine this loss exactly by taking the separate inventory which she had of the third floor, from which the tires were taken, and by adding thereto the tires which had been put on that floor, and deducting the tires which had been taken therefrom, of which she had a written memorandum. She also testified that this loss could be readily determined by taking the gross inventory of January 2, adding thereto the merchandise purchased between that date and the date of the burglary, and deducting therefrom the merchandise sold during that period. This she testified she could do readily and exactly from the books which were offered in evidence.

■ Counsel for appellant seek to discredit the testimony of Miss Abrams, but her testimony was believed by the jury, and is not in conflict with any of the physical facts, nor the books and records of the plaintiff company. In fact, Mr. Stuppy, one of defendant's auditors, admitted on the witness stand that the method employed by Miss Abrams for ascertaining the loss was one correct method for ascertaining it. The inventories and card indexes properly constituted a part of the books as kept by the plaintiff, and with the other books and records kept by plaintiff constituted a substantial compliance with the requirements of the policy of insurance. The fact that the card index containing the inventory of plaintiff's warehouse was not produced at the trial cannot be taken advantage of by the defendant, because it was delivered to its auditors, and they failed to produce it. One of defendant's auditors, who was a certified accountant and who examined plaintiff's books and records for a period of some two months, was not called as a witness on behalf of defendant. The record contains no explanation as to why this witness was not called, nor why the card index inventory was not produced. Under these circumstances, the presumption is that his testimony, had he been produced, as well as the card index inventory, shown to have been in the possession of defendant, would have been damaging to the defendant. Lincoln Nat. Life Ins. Co. v. Erickson (C. C. A.) 42 F.(2d) 997; Brown v. Maryland Casualty Co. (C. C. A.) 55 F.(2d) 159; Ryan v. Continental Casualty Co. (C. C. A.) 47 F.(2d) 472; Ætna Life Ins. Co. v. Ryan (C. C. A.) 255 F. 483.

We are clear that there was substantial evidence to sustain the finding of the jury that plaintiff had kept such books, invoices, and data by which the amount and value of the goods in the store at the time of the burglary could be reasonably ascertained.

■ It is finally urged that the court erred in overruling defendant's motion for a new trial. A motion for new trial on the ground that the verdict is not sustained by the evidence is addressed to the sound discretion of the trial court. It appears from the record that the court considered defendant's motion and in its discretion denied same. This ruling will not be reviewed on appeal. Yellow Cab Co. v. Earle (C. C. A.) 275 F. 928; Chicago, M. & St. P. Ry. Co. v. Heil (C. C. A.) 154 F. 626; Southern Surety Co. v. United States (C. C. A.) 23 F.(2d) 55; Cudahy Packing Co. v. City of Omaha (C. C. A.) 24 F.(2d) 3; Chicago, B. & Q. R. Co. v. Conway (C. C. A.) 29 F.(2d) 551; Fidelity & Casualty Co. v. Niemann (C. C. A.) 47 F.(2d) 1056; O'Brien v. General Accident F. & L. Assur. Corp. (C. C. A.) 42 F.(2d) 48; Mann v. United States (C. C. A.) 49 F.(2d) 131.

The judgment appealed from is therefore affirmed.