DUDLEY BARRINGTON, Appellant, *v.* HOTEL ASTOR, Sued as
HOTEL ASTOR COMPANY, INC., Respondent.

First Department, July 11, 1918.

**Innkeepers — implied warranty as to quality of food served to
guests — liability for serving food containing mouse — appeal —
practice — when Appellate Division cannot reinstate verdict.**

Where a person enters a restaurant and orders certain food which is furnished
by the hotelkeeper there is a sale and the hotelkeeper impliedly warrants
that the food is wholesome to eat, contains no deleterious matter and is the
food ordered.  Hence, a person who ordered a stew in the defendant's
restaurant and became ill on discovering that it contained a mouse which
had been partially chopped up, he is entitled to recover upon the hotel-
keeper's implied warranty that the dish contained no ingredients beyond
those ordinarily placed therein.

*It seems*, that the implied warranty aforesaid applies only to such food as
the hotelkeeper himself prepares and does not obtain in the case of food
prepared by others, such as canned goods, or those known by a trade
name.

Where the court did not submit any specific question of fact to the jury,
but directed them to render a general verdict, and declined to pass upon
the defendant's motion to set aside the verdict and to grant a new trial
on the grounds specified in section 999 of the Code of Civil Procedure,
the Appellate Division, although it reverses a judgment dismissing the
complaint by the direction of the court, cannot reinstate a verdict for
the plaintiff.

APPEAL by the plaintiff, Dudley Barrington, from a judg-
ment of the Supreme Court in favor of the defendant, entered
in the office of the clerk of the county of New York on the
28th day of July, 1917, upon a dismissal of the complaint by
direction of the court at the close of plaintiff's case after a
verdict in plaintiff's favor had been rendered by the jury in
the sum of $1,000.

*Anthony J. Ernest* of counsel [*John J. McBride*, attorney],
for the appellant.

*Jabish Holmes* of counsel [*Thomas M. Healy* with him on
the brief; *Dixon & Holmes*, attorneys], for the respondent.

DOWLING, J.:

This is an appeal from a judgment in favor of the defend-
ant dismissing the complaint after the rendition of a verdict

in favor of the plaintiff in the sum of $1,000. The trial court refused to pass upon the motion to set aside the verdict as against the weight of the evidence or as a matter of judicial discretion, and as he had reserved decision on the motion to dismiss the complaint until after the coming in of the verdict, passed solely on the motion to dismiss the complaint.

On August 3, 1916, the plaintiff registered as a guest at the Hotel Astor in the city of New York at about four o'clock in the afternoon, and at about eight o'clock in the evening went into the restaurant of the said hotel and gave an order for liquor and for food which included kidney sauté. After the lapse of some time the food ordered was brought to him and after he had eaten part of the sauté and was about to transfer some more from the casserole, in which it was contained, to his plate, he found half a mouse included in the part so transferred and the other half still in the casserole. The mouse gave evidence of having been chopped in two, and as soon as the plaintiff discovered the unexpected addition to his order he became violently sick and remained so for some weeks, and suffered illness and other discomforts as the result thereof, including a pronounced loss of appetite. He was examined by the hotel physician as soon as he left the restaurant, which followed immediately upon the discovery of the mouse, and remained in bed eight days before he was able to leave. There is no doubt that the amount of the recovery is not disproportionate to the results which followed on the occurrence in question. Plaintiff denied that he carried the mouse into the hotel with him, and the effort of the defendant was directed towards showing that that was the only possible solution of the situation, for the presence of the mouse is not disputed and the only question to be solved is how it came to be present. The cross-examination of the plaintiff was largely devoted to showing that plaintiff, who is an actor and who was seeking employment at the time in the motion-picture business, had really placed the mouse in the dish himself, or had so acted after having brought it in with him as to cause it to appear that he had taken it from the dish. Whether the mouse was cooked or in its natural state the plaintiff was unable to state, although he gave details of its condition not necessary to be here recited which indicated

that it had been subjected to heat. He claims to have eaten part of the mouse before he discovered the nature of the food which he was enjoying.

For the defense various employees were produced who had to do with the preparation and service of the food. From this testimony there can be no doubt that the mouse actually was present contemporaneously with the serving of the food and that plaintiff did show half of it at once to the waiter and gave expression to his surprise at the discovery, which no one connected with the defendant's business is able to explain. Whether the mouse had been cooked partially or completely or was still in its natural state is a matter of doubt, for the testimony upon that point is varying, perhaps because of the lack of familiarity of the witnesses with the external indications thereof as to this particular kind of flesh. While one of the defendant's employees who saw the dish after it was returned from the dining room said the mouse was " not very cooked," what the actual condition of the mouse was with reference to whether or not it had been cooked in the defendant's kitchen, in the process of preparing the kidney sauté, remained largely a matter of opinion. There was no opportunity given for the observation of its state by the defendant's managers, as one of the defendant's waiters ate the remainder of the sauté before his attention was called to the additional ingredient therein, and he was unable to testify whether or not he ate any remaining part of the mouse. While neither of the medical experts produced testified that the flesh of a mouse is dangerous to health when eaten, yet the prejudice which still exists against that form of food sufficiently explains the consequences which ensued to plaintiff from his consumption of it.

Upon the conflicting testimony the jury found that the plaintiff did not bring the mouse with him into the dining room, but that it was in the dish containing his order when it was placed before him, having in some way been introduced therein during the preparation of the food in the defendant's kitchen, whether it found a place therein during the process of cooking or afterwards. It cannot be successfully argued that there was not a question for the jury nor that it was not fairly decided upon the conflicting testimony. The learned trial

court, however, dismissed the complaint and disregarded the verdict of the jury for the reason that in his opinion there was no implied warranty that the food served to plaintiff was wholesome to eat and that it contained no sickening substance unsuitable for food and that it was the food ordered. The question of defendant's negligence was eliminated by the plaintiff's counsel upon the trial, so that any recovery must be predicated upon the theory of such implied warranty.

We are referred to cases in other jurisdictions having to do with the relations of hotelkeepers or innkeepers with their guests, to the effect that a hotelkeeper is liable only for negligence, is not an insurer of the quality of the food which he supplies and does not sell such food. It is claimed that as an innkeeper does not lease his rooms, so he does not sell the food he supplies to his guests. As was said in one case (*Parker* v. *Flint*, 12 Mod. 254), " he does not sell but utters his provision." In my opinion these cases are not controlling in this State. They are based upon reasoning having to do in large measure with the earlier method of furnishing accommodation by innkeepers to their guests, where for a stipulated daily sum the host furnished lodging, food and service. There, perhaps, it may have been properly said that there was no sale of any particular dish placed before the guest for his consumption, for the host was only bound to satisfy the guest's reasonable needs so far as food was concerned and the guest had the right to eat such food as he required in reason and no more, and could not carry away with him any food which he had not eaten. But even under the common law it was held as far back as Year Book, 9 Henry VI, 53, that " if I go to a tavern to eat, and the taverner gives and sells me meat and it corrupted, whereby I am made very sick, action lies against him without any express warranty, for there is a warranty in law." (Cited and followed in *Wallis* v. *Russell*, 2 Irish Rep. [1902] 611.) And Keilway (22 Henry VII, 91) said: " No man can justify selling corrupt victual, but an action on the case lies against the seller, whether the victual was warranted to be good or not." This reasoning would seem to be without application to modern conditions, where any person, whether a guest of the hotel or not, may enter its restaurant and order such

food as he desires, paying a stipulated price therefor. I can see no logical reason why this is not a sale and delivery upon the part of the hotelkeeper and a corresponding purchase upon the part of the guest. Whatever refinements of distinction may have been made in the past as to the liability of a hotelkeeper, it seems to me that under modern conditions the food is sold and the hotelkeeper impliedly warrants that it is wholesome to eat, contains no deleterious matter and is the food ordered. This applies, of course, only to such food as the hotelkeeper himself prepares. Where food from its nature is obviously prepared by other persons, such as canned goods or goods known by a trade name and, therefore, obviously prepared elsewhere, the rule is different.

I think the liability of the defendant herein is regulated and sustained by the latest utterance of the Court of Appeals upon the question of the responsibility of dealers for selling unwholesome food which is contained in *Race* v. *Krum* (222 N. Y. 410). That was an action brought against a person conducting a drug store who in connection with such business sold ice cream to be consumed in the store and which he himself had prepared. The considerations which actuated the Court of Appeals to affirm the liability of the dealer in that case are applicable to the case at bar. As the court there said: " He [plaintiff] had no opportunity of determining, when the purchase was made, whether the cream were good or bad. Defendant did have such opportunity. He could have ascertained whether the ingredients which went into the cream contained the poison referred to, or after it was prepared he could have so cared for it that it would have been impossible for filth, which it is conceded is the cause of the poison, to have gotten into it." The trial court there had charged that when defendant sold the ice cream in question to plaintiff he impliedly warranted it was wholesome and fit to eat. The court there was passing, as it said, upon the liability of a dealer who made or prepared the article that he was selling, and the sentence which followed in its opinion, as it seems to me, was inserted for caution, that it might be clear that its holding applied only to those who actually prepared the food they sold. That is the present case. The hotel itself prepared

this dish and had sole control thereof from the selection of the uncooked ingredients to the final placing of the prepared food before the plaintiff for consumption. A guest at a hotel who orders a portion of kidney sauté has the right to expect, and the hotelkeeper impliedly warrants, that such dish will contain no ingredients beyond those ordinarily placed therein. The hotelkeeper also impliedly warrants that the dish is wholesome and fit for human consumption and contains nothing rendering it unsuitable for use as human food. The defendant does not seek to justify the inclusion of the mouse in this dish as any proper part of its menu. The presence of a foreign substance in the food upon the finding of the jury is something for which the defendant was solely responsible. We see no injustice in applying such a measure of liability to the hotelkeeper. The entire control of the supplies which enter into the dish, as well as its method of preparation and progress to the table from the kitchen, are entirely within his control. In a reputable hotel the guest has a right to assume that the food which is placed before him is fit for him to eat. That is why he pays the charges which are prevalent in restaurants of any standing. The defendant urges that such a rule may be made the means of oppression or blackmail, but experience has proven that courts and juries may be relied upon to see to it that no such abuse of a salutary rule is allowed to exist.

We are of the opinion that the plaintiff established his cause of action and that the verdict of the jury was proper.

We are unable, however, to direct that the verdict be reinstated for the reason that the trial court did not submit any specific question of fact to the jury as provided for in section 1187 of the Code of Civil Procedure, but directed them to render a general verdict. The court declined to pass upon the defendant's motion to set aside the verdict and to grant a new trial on the ground specified in section 999 of the Code of Civil Procedure, and under those conditions the verdict cannot be reinstated but a new trial must be ordered. (*O'Sullivan* v. *Knox*, 81 App. Div. 438; *Sullivan* v. *Metropolitan Street R. Co.*, 37 id. 491; *Russell* v. *Rhinehart*, 137 id. 843; *Burns* v. *N. Y. & Long Island Traction Co.*, 139 id. 146.)

The judgment appealed from is, therefore, reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.