## Commonwealth v. Penn-Harris Hotel Company

*William A. Schnader*, Attorney General, and *John Y. Scott*, Deputy Attorney General, for Commonwealth.

*Nauman, Smith & Hurlock*, for defendant.

HARGEST, P. J., July 23, 1934.—This is an appeal from the settlement of a tax, amounting to $115.44, made February 1, 1934, under the Emergency Relief Sales Tax Act of August 19, 1932, P. L. 92.

Section 3 of the act provides, in part, as follows:

"A state tax is hereby imposed and assessed upon sales of tangible personal property, at the rate of one per centum upon each dollar of the gross income derived from the sales of such property".

Section 4 of the act makes it the duty of every vendor to transmit to the Department of Revenue of the Commonwealth, upon the form prescribed by the department, the gross income arising from sales of tangible personal property.

Section 5 provides: "Every vendor, at the time of making the return required under section 4, shall compute and pay to the department the tax due to the Commonwealth by him for the preceding six months' period. The amount of all taxes imposed under the provisions of this act shall be due and payable at the time the return for such six months' period is required to be filed with the department by this act."

Section 7 provides that if the department is not satisfied with the return and payment of the tax made by any vendor it may make an additional assessment based upon the facts contained in the return or upon any information within its possession.

By stipulation, this case was submitted to the decision of the court without the intervention of a jury, pursuant to the Act of April 22, 1874, P. L. 109.

The facts are admitted. The defendant filed its return showing the total sales of $99,093.03, admitted taxability on $87,549.33, and paid the tax thereon, but denied liability to tax on $11,543.70. The Department of Revenue, however, settled the tax on the latter sum, amounting to $115.44, from which settlement this appeal was taken.

The defendant operates a hotel in the City of Harrisburg upon the "European plan". The amount of $11,543.70 represents food that was charged to guests in the dining room or in their guest rooms, as well as food and beverages served in the guest rooms for which cash was paid. This sum does not represent cash received for meals in the coffee room or grill room.

### Discussion

The defendant claims that the food and beverages served to guests of the hotel do not represent sales in the sense that this term is used in the Emergency Sales Tax Act. There is no way of telling whether the food and beverages charged to the guests or paid for by the guests in the guest rooms were for the guests alone or for some other guests to whom the hotel guests may have been the hosts.

The defendant relies upon the proposition stated in Beale, Innkeepers and Hotels, sec. 169, as follows:

"As an innkeeper does not lease his rooms, so he does not sell the food he supplies to the guest. It is his duty to supply such food as the guest needs, and the corresponding right of the guest is to consume the food he needs and to take no more. Having finished his meal, he has no right to take food from the table, even the uneaten portion of the food supplied to him; nor can he claim a certain portion of the food as his own, to be handed over to another in case he chooses not to consume it himself. The title to food never passes as a result of an ordinary transaction of supplying food to a guest; or, as it was quaintly put in an old case, 'he does not sell but utters his provision.' "

See also 24 R. C. L. 196, sec. 467; 14 R. C. L. 510, sec. 15; 55 C. J. 766, sec. 733, and cases cited.

An inn is an ancient institution and as such furnishes its guests with meals and lodging, and the principle above referred to perhaps was established long before the "European plan" was known. But the evolution in the hotel business has, in our opinion, brought about a well-defined distinction which is applicable here and which, we think, is reflected in the later cases bearing upon this subject.

In West v. Katsafanas, 107 Pa. Superior Ct. 118, an action was brought against a restaurant keeper to recover damages for breach of an implied warranty. The plaintiff ordered a sandwich and while eating part of it discovered that it was not palatable and later became ill from poisoning. The question involved was whether there was a sale of the sandwich and whether the restaurant keeper was bound by an implied warranty that the food served was fit for human consumption. Judge Baldrige, after referring to the quotation from Beale on Innkeepers and Hotels, quoted above, and other authorities, says:

"The greater weight of authority, however, takes the opposite view. It has been held that if one buys a meal which includes intoxicating liquor, it is a pur-

chase of the drink (Com. v. Worcester, 126 Mass. 256; State v. Lotti, 72 Vt. 115, 47 A. 392); likewise a glass of milk purchased with a meal: Com. v. Warren, 160 Mass. 533, 36 N. E. 308. To the same effect are People v. Clair, 221 N. Y. 108, 116 N. E. 868, and Com. v. Phœnix Hotel Co., 157 Ky. 180, 162 S. W. 823.

"Our Supreme Court held in Com. v. Miller, 131 Pa. 118, 18 A. 938, that a restaurant keeper, who served oleomargarine with a meal, sold it in violation of the terms of the statute prohibiting the sale of oleomargarine. . . . On excellent authority, however, it is held that the title to food served by an innkeeper never passes. Whether this analogy holds good in a restaurant where a customer pays not for a meal, but for a definite portion of food, may perhaps be questioned. May not one who secures and pays for a piece of pie at an 'automat' or luncheon spa take it from the plate and walk off with it without wrong? . . .

"Concluding as we do that the transaction was a sale, an implied warranty exists."

In Barrington v. Hotel Astor, 184 App. Div. 317, 171 N. Y. Supp. 840, the plaintiff registered as a guest in the hotel and went into the restaurant and gave an order for liquor and food, including kidney saute. After he had eaten part of the kidney saute and was about to transfer more from the casserole to his plate, he found half a mouse in the part transferred and the other half in the casserole. The mouse gave evidence of having been chopped in two. The plaintiff became sick and remained so for some weeks. It was claimed that, inasmuch as an innkeeper does not lease his rooms or sell his food, there was no implied warranty as to the food and that the plaintiff could not recover. The Appellate Division of the Supreme Court, speaking through Justice Dowling, after referring to the theory of the old cases, said (p. 320):

"This reasoning would seem to be without application to modern conditions, where any person, whether a guest of the hotel or not, may enter its restaurant and order such food as he desires, paying a stipulated price therefor. I can see no logical reason why this is not a sale and delivery upon the part of the hotelkeeper and a corresponding purchase upon the part of the guest. Whatever refinements of distinction may have been made in the past as to the liability of a hotelkeeper, it seems to me that under modern conditions the food is sold and the hotelkeeper impliedly warrants that it is wholesome to eat, contains no deleterious matter, and is the food ordered."

We think the reasoning of this case is inherently sound. The common-law rule of the old cases may yet apply to a hotel operated upon the "American plan", where the innkeeper furnishes lodging and meals for a daily or weekly sum. There the guest is entitled to such food only as the innkeeper sets before him. He is entitled to no particular portion of it and no particular kind of food, but only to such as will afford him a satisfactory meal. He has no right to take away that which he does not eat. If, for instance, lamb chops were furnished at the meal, one guest might be satisfied with one, another might want three. On the one hand, the guest does not know what he is going to have for the meal and, on the other hand, the innkeeper does not know how much the guest will consume. Under the European plan, the situation is wholly different. One goes into the dining room and orders a specific article of food at a specific price and pays for that article. The innkeeper get paid for it whether the guest eats it or not. The transaction is the same whether he happens to have a room in that hotel or not. The room guest in the hotel pays the same price as any other patron in the restaurant. It is a refinement that we are not able to follow to say that that is not a purchase of the specific article ordered. If one

orders a lamb chop at a butcher's, he gets the lamb chop and pays for it. If he orders it in a restaurant, it is a similar transaction. In both cases it is intended for food, except that one is raw and the other is cooked, and certainly that would not determine whether the transaction was a sale or not. Nor can it make any difference whether the cash was paid for the specific thing ordered or whether credit was extended for a few days by the signing of a waiter's slip. One is a cash sale, and the other is a sale on credit. Furthermore, the receipts in question are from both food and drinks served in the rooms for which cash was paid.

We are not unmindful of the case of McClure, to use, v. Krumbholz & Riley, 9 Dist. R. 544. That case involved the right to collect the mercantile license tax from hotel keepers under the Act of April 10, 1849, P. L. 570. Judge Frazer held that such tax could not be collected. In the course of his opinion, he said:

"We are unable to see wherein a house so conducted [on the European plan] is any less a hotel than one doing business on what is known as the 'American plan.' Each is a 'house where the traveller is furnished with everything which he has occasion for whilst upon his way;' the only difference in the manner of transacting their business is that the guests at a hotel conducted upon the 'American plan' pay for their lodging and meal in one bill, while the guests at a house conducted upon the 'European plan' pay for these charges separately."

Notwithstanding the highly respected authority from which this language emanates, we think that the distinction very definitely rests in the last sentence insofar as the question of a sale of the food is concerned. It is true, as recited by Judge Frazer, that both are hotels, but the one conducted on the American plan furnishes lodging and meals for a stipulated daily sum without regard to the kind or quantity of food consumed in the meals. The other furnishes a specified kind of food at a specified price, and nothing else. The article ordered is priced and paid for. It must not be overlooked that the defendant in this case, being a hotel, admits that it makes sales and has paid the tax for the cash received in its dining rooms from the sale of food to all persons, including those who happen to be registered as its guests. So the question is not whether it is a hotel but whether it sells the specific articles of food and drink involved in this case.

We conclude that the transaction is a sale. It follows that the Commonwealth is entitled to judgment. The assessment was made February 1, 1934.

*Statement*

```
Amount of the tax..................................$115.44
Interest from April 2, 1934, being 60 days after date of
    settlement .......................................    2.12
                                                      _____
Total .............................................$117.56
Attorney General's commission, 5 percent..................    5.88
                                                      _____
Total .............................................$123.44
```

Now, July 23, 1934, judgment is hereby directed to be entered in favor of the Commonwealth and against Penn-Harris Hotel Company, defendant, in the sum of $123.44, unless exceptions be filed within the time limited by law.

From Homer L. Kreider, Harrisburg, Pa.