Alexander Del Giorno, J.
This is a motion by the State for an order dismissing the claim herein upon the ground that it appears on the face thereof that it fails to state a cause of action.
The claim is brought to recover damages for ‘ ‘ severe emotional and neurological disturbances with residual physical manifestations ” sustained by the infant claimant, aged nine years, as a result of the alleged negligence of the State.
A reading of the claim as filed indicates that when claimant boarded the chair lift maintained at the Bellayre Mountain Ski Center at the top terminal of the lift, the safety bar of the chair was not closed and she was carried down the mountain from its top terminal to its bottom terminal with the bar open.
The law on the subject of recovery for mental suffering has undergone a gradual metamorphosis since it was enunciated first in the ease of Mitchell v. Rochester Ry. Co. (151 N. Y. 107) in the year 1896. There the court held that in the absence of some impact upon the person of the plaintiff, there can be no recovery for the physical consequences of mental suffering or fright. In reaching this conclusion, the court considered the multiplicity of suits which might ensue and a danger that claims could be fabricated. The rule of this case was relaxed in Comstock v. Wilson (257 N. Y. 231 [1931]) where a husband sought damages for the death of his wife, who had suffered a fractured skull resulting from a fall to the sidewalk. The automobile of defendant had bumped the automobile of the plaintiff, in which the decedent had been a passenger. Neither plaintiff nor his deceased wife had sustained any physical injury from the impact itself. When decedent alighted from the automobile to obtain information, however, she fainted because of nervous emotional upset following the accident and sustained her injury. The court stated (pp. 235-239): “ Mental suffering or disturbance, even without consequences of physical injury, may in fact constitute actual damage; nevertheless the courts generally do not regard it as such damage as gives rise to a cause of action, though it be the direct result of the careless act. Whether the true explanation of that conclusion lies in an historical conception of injury or in supposed considerations of public policy may for the present be put aside. In either event the reason fails where fright or nervous shock causes visible physical injury. * * * Refusal to sustain such a cause of action can be based only on one of two grounds: Either that the careless act invaded no right of the injured party and is not a tort, or that the physical injury consequent *550 upon the mental disturbance or shock is not a proximate result of the tort. * * * The defendant should have foreseen that a collision with the car in which plaintiff’s testatrix was a passenger would cause injury to the passengers. She did collide with the car through lack of care, and she did cause injury to the plaintiff’s testatrix. That injury was not confined to fright. The fright was only a link in the chain of causation between collision and fractured skull.”
Other exceptions to the rule of the Mitchell case (151 N. Y. 107, supra) are found in cases which have involved contaminated food (Barrington v. Hotel Astor, 184 App. Div. 317; Carroll v. New York Pie Baking Co., 215 App. Div. 240; Sider v. Reid Ice Cream Co., 125 Misc. 835). In the Sider case (supra) the court stated (p. 836): “ There seems to be no reason for the rule announced in the Mitchell case. It is said that the rule was adopted as one of public policy, or as one of necessity to avoid the perpetration of fraud. Whatever may have been the prevailing conditions when this rule was announced, there is now no need of it on the score of public policy or necessity. The rule has not been applied in a case like the one under consideration, where a foreign substance was contained in a food that was served by defendant. (Barrington v. Hotel Astor, 184 App. Div. 317.) There a portion of the foreign substance had been eaten, but the opinion indicates that that caused no injury — the physical condition of plaintiff evidently being caused solely by the sight of it and the knowledge that it was in the food.”
In other cases where the tort committed was wanton, reckless and mischievous (Beck v. Libraro, 220 App. Div. 547) and where a positive, willful and mischievous act caused one to become nervous, sick and upset necessitating medical aid, exceptions to the rule of the Mitchell case (151 N. Y. 107, supra) have been made.
Other jurisdictions have permitted recovery of damages for personal injuries occasioned by fright or mental shock though there has been no physical contact. (Kelly v. Lowney & Williams, 113 Mont. 385; Lewis v. Woodland, 101 Ohio App. 442; Resavage v. Davies, 199 Md. 479; Houston Elec. Co. v. Dorsett, 145 Tex. 95.)
The most recent case in this field, and one which has been of keen interest to the Bar, is that of Ferrara v. Galluchio (5 N Y 2d 16). In that case, plaintiff, suffering from bursitis in the right shoulder, received a series of X-ray treatments from defendant doctors. There developed; as a result of the X-ray therapy, a condition diagnosed as chronic radioderma *551 titis. About two years after the treatment, a dermatologist who examined her advised her to have her shoulder checked every six months, inasmuch as the area of the burn might become cancerous. In the action brought by her for malpractice, plaintiff introduced testimony of a neuropsychiatrist to the effect that she was suffering from severe eancerophobia, defined as the phobic apprehension that she would ultimately develop cancer in the site of the radiation burn. The witness testified further that plaintiff might have permanent symptoms of anxiety. Plaintiff did not develop cancer actually, but did suffer mental anguish caused by the fear that she would develop it. In affirming a judgment in favor of plaintiff upon a jury verdict in the sum of $25,000, of which amount $15,000 was awarded on the basis of the eancerophobia, the court held that it was proper for the jury to have considered the statement of the dermatologist that plaintiff should have her shoulder examined every six months because there was a possibility that cancer might develop, upon the ground that the purpose of introducing such statement was to establish that there was a basis for her mental anxiety. It was held proper for the jury to have considered such testimony in determining the amount of recovery against the defendants. The court held further that in this State, as in most other States, a wrongdoer is liable for the entire ultimate result, even though the original injury may have been aggravated by a physician’s negligent treatment. There was a real connection between the ultimate damage and the original wrong, and the risk of the dermatologist’s advice, with its effects upon the plaintiff, must be borne by the wrongdoers who started the chain of circumstances without which the eancerophobia would not have developed. The original wrongdoers would be responsible for the resulting damage to its full extent, including additional mental anguish caused plaintiff. The court stated (pp. 20-21): “ The only difference here is that the later treatment by the dermatologist did not aggravate the physical injury inflicted by the original wrongdoers but, rather, increased only the mental anguish attendant upon such injury. We perceive no sound reason for drawing a distinction between the two situations.”
The court pointed out that under the circumstances of the case such recovery was justified, although the ease was ‘‘ somewhat novel * * * in that it appears to be the first case in which a recovery has been allowed against the original wrongdoer for purely mental suffering arising from information the plaintiff received from a doctor to whom she went for *552 treatment of the original injury” (p. 21). The court said (p. 21): “ Freedom from mental disturbance is now a protected interest in this State ”, and, quoting from Prosser on Torts (§ 34, pp. 212-213), continued: [T]he only valid objection against recovery for mental injury is the danger of vexatious suits and fictitious claims, which was loomed very large in the opinions as an obstacle. The danger is a real one, and must be met. Mental disturbance is easily simulated, and courts which are plagued with fraudulent personal injury claims may well be unwilling to open the door to an even more dubious field. But the difficulty is not insuperable. Not only fright and shock, but other kinds of mental injury are marked by definite physical symptoms, which are capable of clear medical proof. It is entirely possible to allow recovery only upon satisfactory evidence and deny it when there is nothing to corroborate the claim, or to look for some guarantee of genuineness in the circumstances of the case. The problem is one of adequate proof, and it is not necessary to deny a remedy in all eases because some claims may be false. The very clear tendency of the recent cases is to refuse to admit incompetence to deal with such a problem, and to find some basis for redress in a proper case.’”
The court found that there was ‘ ‘ ‘ guarantee of genuineness [of the eancerophobia] in the circumstances of the case ’ ” (p. 21) and that it was “ entirely plausible, under such circumstances, that plaintiff would undergo exceptional mental suffering over the possibility of developing cancer ” (p. 22).
Commenting upon its view that it need not announce a principle concerning the extent to which an original wrongdoer may be held for mental anguish caused to his victim as a result of information received from another doctor during the treatment of the original injury, the court stated (p. 22): “ every case must be decided according to the facts peculiar to it. The verdict in the present case is supported by the facts. * * * The applicable principle has already been stated in Milks v. Mclver (264 N. Y. 267, 269, supra): 1 Liability for damages caused by wrong ceases at a point dictated by public policy or common sense.’ In the present case neither public policy nor common sense is offended by this jury verdict. Bach negligence case must, in turn, be solved ‘ pragmatically. ’ (Bird v. St. Paul Fire & Mar. Ins. Co., 224 N. Y. 47, 52, 53.) ”
In the instant case, it is alleged that on the descent from the top of the mountain, the infant claimant was placed alone in one of the chairs by an employee of the State, who negligently failed to secure and lock the safety bar of the chair, *553 and that on the ride down the claimant was without the safeguard of the safety belt and remained unprotected, with the result that she suffered severe emotional and neurological disturbances with residual physical manifestations.
In view of all of the foregoing, the court holds that in her notice of claim, the claimant has stated a valid cause of action. If there is a negligent act or omission of another resulting in mental disturbance being caused to a person, and there is a real connection between the ultimate damage and the original wrong, the wrongdoer is liable in damages.
The trial of the claim will be determinative of its merits. The emotional and neurological disturbances with residual physical manifestations alleged to have been sustained by claimant will become at such time the subject of clear medical proof. If such proof is deemed adequate by the court, then the possibility that the claim of mental disturbance has been simulated will have been negated. On the other hand, if the medical testimony fails to sustain the claimant, she will fail in her action. In either event, neither public policy nor common sense will be offended. On the basis of her claim as presented, however, it is the opinion of the court that she cannot be denied the right of a trial. The court will not deny claimant a remedy for mental injury allegedly sustained merely because of a possibility that the claim is false.
The motion to dismiss the claim is denied. Settle order on notice.