## Elizabeth Chapman, Appellee, v. Maria Roggenkamp, Executrix, Appellant.

### Gen. No. 17,877.

1. SALES, § 254*—*when implied warranty of fitness of canned goods for food.* Person poisoned by eating unwholesome canned peas purchased of retail dealer, *held* entitled to damages from such retail dealer on an implied warranty that the peas were fit for food.

2. SALES, § 254*—*when retail dealer impliedly warrants food provisions to be wholesome.* In the sale of all provisions by a retail dealer for immediate domestic use there is an implied warranty of the fitness and wholesomeness of such provisions for consumption.

3. SALES, § 283*—*questions for jury.* Whether a person's illness was caused from eating unwholesome food purchased of a retail dealer is a question for the jury.

Appeal from the Superior Court of Cook county; the Hon. HARRY C. MORAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed October 9, 1913.

**Statement by the Court.** On December 28, 1908, Elizabeth Chapman, plaintiff below, brought suit in the Superior Court of Cook county against John Roggenkamp, Adolph Roggenkamp and Frank C. Weber & Co. to recover damages sustained by her from eating the contents of a can of peas, sold to her by said John Roggenkamp. Before the trial, on plaintiff's motion, it was ordered that "all papers and proceedings in said cause be and are hereby amended by discontinuing as to the defendant, Frank C. Weber & Co." During the trial, on plaintiff's motion, the same order was entered as to the defendant, Adolph Roggenkamp. The amended declaration charged in effect that on January 1, 1908, the defendant John Roggenkamp was engaged in the grocery business and sold to plaintiff in Cook county a can of peas for eating purposes, for which plaintiff paid defendant the price

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

asked; that said peas were purchased by plaintiff for immediate consumption by herself and family, which purpose was known to defendant; that defendant warranted that said peas were good, sound, healthy and wholesome, and fit for human consumption, and were free from deleterious or poisonous substances; that plaintiff relied upon said warranty in purchasing said peas; that said can of peas contained poisonous and deleterious substances, and that said peas were unwholesome and unfit for human use, so that when eaten would cause sickness to, and would be dangerous to the life and health of, the person eating them; that after purchasing said peas plaintiff cooked the same in a reasonably and careful and proper manner and, relying upon said warranty, ate a portion of said peas, and thereupon, by reason of the poisonous condition of said peas when purchased, plaintiff became ill, and was greatly injured and damaged, etc. The defendant filed a plea of the general issue, and also two special pleas of the statute of limitations and that the defendant did not "either expressly or impliedly warrant the contents of said can of peas." To those special pleas demurrers were interposed and sustained. The trial resulted in the jury finding the issues in favor of the plaintiff and assessing her damages at five hundred dollars, upon which finding judgment against the defendant was entered. After the defendant had perfected his appeal to this court he departed this life, and the executrix of his last will was here substituted as appellant.

The facts are substantially as follows: On January 1, 1908, the defendant was engaged in the retail grocery business on West 51st street, Chicago. Plaintiff's husband was a barber, and his shop was across the street from defendant's grocery store. In the rear of the shop, plaintiff, her husband, their three children and several other persons resided. On the day aforesaid plaintiff went to defendant's store and purchased some groceries, paying cash for the same. Among

the articles purchased was a can of peas. The can was of tin, on the outside of which was pasted a paper label on which was printed "New City Early June Peas. Packed for Frank C. Weber & Co., Chicago, Ill. Finest Quality." Plaintiff testified that she "asked for a can of best peas," and that defendant handed her the can of peas in question, which she took to her home and put on the pantry shelf. She further testified that, on January 4th, she personally opened the can, rinsed the peas, put them in a "sauce pan" with some milk, a little flour and some butter and salt, and cooked the peas; that she also about the same time cooked other articles of food for the family noon day meal; that when she opened the can and rinsed the peas they apparently looked all right and that she did not notice any odor from them. It appears from the testimony of several witnesses that plaintiff and her three children first ate luncheon together, consuming, with other articles of food so prepared, all of the peas in question with the exception of a few which a female assistant to plaintiff in the house-work "tasted;" that shortly thereafter plaintiff's husband, his brother and one Schulz, an assistant in the barber shop, ate luncheon, partaking of the same articles of food to a greater or less extent as plaintiff and her children had eaten, with the exception of the peas in question; that shortly after plaintiff and her three children had partaken of the meal they all became extremely ill, feeling dizzy and vomiting; that plaintiff became unconscious; that said assistant in the housework also became ill, but not to the extent to which plaintiff and said children did; that none of the men became ill and that two physicians were immediately sent for and attended and prescribed for plaintiff and the children. Dr. Felmlee, plaintiff's family physician, testified that he arrived at plaintiff's home about two o'clock in the afternoon, after the other physician had arrived; that he examined plaintiff and the children with the other physi-

cian and found them suffering from "violent vomiting and purging;" that plaintiff was "extremely prostrated, very weak and almost pulseless," and that from what he personally observed at the time and from "the history of the case" he formed the opinion that plaintiff "at that time was suffering from a ptomaine poison."

C. E. HECKLER, for appellant.

PEASE, SMIETANKA & POLKEY, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

It is contended by counsel for defendant that the evidence does not establish that plaintiff's illness and sufferings were caused by the peas. This was a question for the jury under all the facts and circumstances in evidence. From the verdict it is evident that the jury believed that plaintiff's illness was caused by her eating the peas in question and, in our opinion, the verdict is amply supported by the evidence.

It is also contended by counsel that, in a sale of canned provisions by a retail dealer directly to a consumer, where the dealer purchased the same from a wholesaler or packer and is not aware of the unwholesome condition thereof at the time of the sale to said consumer, there is no implied warranty that said provisions are sound and wholesome. It is argued that where a person purchases from such a dealer articles of food in cans for immediate consumption, the buyer, from the nature of the transaction, must know that the seller has no greater knowledge as to the condition of the articles than the buyer has, and hence, does not rely upon the seller's superior knowledge, and that, therefore, there is no implied warranty of the wholesomeness of said articles.

In *Wiedeman v. Keller*, 171 Ill. 93, Keller was a

retail dealer in meats and plaintiff called at his place of business and purchased a quantity of pork to be used in her family. The pork turned out to be unwholesome and unfit for food. Plaintiff cooked the pork and ate some of it and was made ill, and it was *held* that the dealer was liable to plaintiff for damages by reason of the implied warranty of the fitness and wholesomeness of the pork for consumption. Our Supreme Court says, on page 98:

"As a general rule, we think the decided weight of authority in the United States is, that in all sales of meats or *provisions* for immediate domestic use by a retail dealer, there is an implied warranty of fitness and wholesomeness for consumption. There is, however, no implied warranty of soundness or wholesomeness arising from the sale of meats or provisions to a dealer or middle-man who buys on the market, not for consumption, but for sale to others. Nor would there be any liability, in a sale for immediate domestic use, where the vendor was not a regular dealer. * * * In this case, however, the appellee was a regular retail dealer, and as such he sold the meat to appellant for domestic use, and, under the law as it seems to be settled in this country, as the meat turned out to be unwholesome, he was liable, *although he was not aware that it was diseased when he sold it to appellant.*

In an ordinary sale of goods the rule of *caveat emptor* applies, unless the purchaser exacts of the vendor a warranty. Where, however, articles of food are purchased from a retail dealer for immediate consumption, the consequences resulting from the purchase of an unsound article may be so serious and may prove so disastrous to the health and life of the consumer that *public safety demands* that there should be an implied warranty on the part of the vendor that the article sold is sound and fit for the use for which it was purchased. It may be said that the rule is a harsh one; but, as a general rule, in the sale of provisions the vendor has so many more facilities for

ascertaining the soundness or unsoundness of the article offered for sale than are possessed by the purchaser, that it is much safer to hold the vendor liable than it would be to compel the purchaser to assume the risk.''

Counsel endeavors to distinguish the *Keller* case *supra,* from the present case. He says that in that case the dealer had an opportunity of inspecting the pork before selling it, which opportunity of inspection the defendant in the presnt case did not have because the peas sold to plaintiff were in a sealed tin can. Inasmuch as it appears from the opinion in the *Keller* case, and from several authorities cited therein, that public safety demands that, in all sales of provisions for domestic use by a retail dealer, there should be an implied warranty of the fitness and wholesomeness of said provisions for consumption, and inasmuch as it further appears in the *Keller* case, as also in the present case, that the retail dealer was not aware at the time of the sale of the unwholesomeness of the articles of food, we think that, under the facts of this case and the weight of authority, the defendant is liable on an implied warranty. See also *Nelson v. Armour Packing Company,* 76 Ark. 352; 15 Am. & Eng. Ency. Law (2d Ed.) p. 1238; *Hoover v. Peters,* 18 Mich. 50, 54.

Complaint is also made of the action of the trial court in admitting and refusing to admit certain testimony, and in giving and refusing to give certain instructions. We have carefully considered the arguments of counsel in these particulars, and are of the opinion that there is no prejudicial error in the record. In the view we take of the law we think the jury were correctly instructed, and we do not think that the verdict is excessive, as contended by counsel.

The judgment is accordingly affirmed.

*Affirmed.*