## CUSHING v. RODMAN.

### No. 6465.

United States Court of Appeals for the District of Columbia.

Decided Feb. 24, 1936.

Godfrey L. Munter, Confer G. Bailey, and Harry Raymond Turkel, all of Washington, D. C., for plaintiff in error.

J. Harry Welch, of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This case arises upon a writ of error to the Municipal Court of the District of Columbia, which, in an action by the plaintiff in error for damages for breach of an implied warranty, entered judgment for the defendant in error. Hereafter the parties will be referred to as plaintiff and defendant. The facts, which are without dispute, are as follows: The plaintiff, on November 24, 1934, at a drug store and lunch room operated by the defendant in the District of Columbia, ordered for a breakfast coffee and a roll. These were served and paid for. The roll was taken by a waiter from a receptacle containing a number kept back of a counter. The plaintiff made no selection of the particular roll served. It had a pebble in it, upon which the plaintiff broke a tooth and thereby suffered pain, disfigurement and dental expenses. The defendant had purchased the roll with others from a confectionery in the District of Columbia, which we assume to be reputable, delivery having been made the morning of the 24th in a paper box, deposited in the receptacle above mentioned. There were no pebbles in the defendant's place of business, and the pebble could not have gotten into the roll there. The roll was like any other in appearance. The pebble was not visible from the outside and could not have been seen on the inside in the customary course of serving. In short, there was no evidence of negligence by the defendant; indeed, none was charged. The cause of action was based solely upon "breach of contract of implied warranty of fitness for human consumption and breach of implied warranty of merchantable quality."

The sole question in the case is whether, upon the service of food for a consideration and for immediate consumption upon the premises of the seller, but which food was not prepared by the seller but purchased elsewhere, and the defect in which was not discoverable except by destroying the marketability of the article, there is an implied warranty of wholesomeness.[1]

---

[1] In this case, we speak in terms of implied warranty of wholesomeness. As pointed out in Ryan v. Progressive Grocery Stores, cit. infra, there are times when an implied warranty of fitness for a particular purpose has no relation to an implied warranty of merchantable quality; but in the case of foods, the distinc-

The only cases decided by this court on the subject of the liability of a purveyor of food for injury caused by unwholesomeness thereof are King v. Davis, 54 App.D. C. 239, 296 F. 986 (1924), and Picard v. Smith, 59 App.D.C. 291, 40 F.(2d) 803 (1930). Each of these cases sounded in tort for negligence and recognized liability therein, but neither case constitutes an authority on the question of liability under the theory of breach of implied warranty. It is conceded by counsel in this case that the question is novel in this jurisdiction.

There is a sharp division of authority upon the question presented. We have examined all of the cases which seem of material significance, including all referred to in the briefs. The leading cases on each side of the question have so thoroughly set forth and discussed all pertinent viewpoints that it would add nothing to the literature upon the subject to restate the cases and points of view in detail. We shall, therefore, only mention the more important cases on each side of the controversy and then summarize the viewpoints expressed therein.

The following, all involving situations where the food dispensed was prepared and served in the defendant's place of business, deny right of recovery for injury from unwholesome-food on the theory of breach of an implied warranty, the viewpoint of the courts being that liability sounds only in tort for negligence: Valeri v. Pullman Co., 218 F. 519 (1914), decided by the United States District Court for the Southern District of New York under an opinion by Augustus N. Hand, as District Judge; Sheffer v. Willoughby, 163 Ill. 518, 45 N.E. 253, 34 L.R.A. 464, 54 Am.St. Rep. 483 (1896);[2] Travis v. Louisville & N. R. Co., 183 Ala. 415, 62 So. 851 (1913); Merrill v. Hodson, 88 Conn. 314, 91 A. 533, L.R.A.1915B, 481, Ann.Cas.1916D, 917 (1914); Rowe v. Louisville & N. R. Co., 29 Ga.App. 151, 113 S.E. 823 (1922); F.

W. Woolworth Co. v. Wilson, 74 F.(2d) 439, 98 A.L.R. 681 (1934), in the United States Circuit Court of Appeals for the Fifth Circuit under an opinion by Sibley, Circuit Judge; Nisky v. Childs Co., 103 N. J.Law 464, 135 A. 805, 50 A.L.R. 227 (1927); and Kenney v. Wong Len, 81 N. H. 427, 128 A. 343 (1925). These cases involved respectively: unwholesome food served in a buffet railroad car;[3] unwholesome oyster stew served in a restaurant;[4] spoiled fried oysters furnished in a dining car;[5] unwholesome creamed sweetbreads in a restaurant;[6] unfit food, exact kind unspecified, served in a railroad dining car;[7] ice cream dispensed at a soda fountain and containing a piece of broken glass;[8] unwholesome fried oysters served in a restaurant;[9] roast chicken dressing containing a mouse, served at a restaurant.[10] It is to be noted that these cases, though they do not on their facts involve situations where the food dispensed was bought elsewhere and in a form not subject to effective inspection without destruction of the marketability of the article, are nevertheless applicable against liability in such a situation. That is to say, if a dispenser of food is not to be held liable on the theory of breach of an implied warranty when he prepares the food himself, *a fortiori* he should not be where he obtains the food elsewhere and necessarily serves it in its original condition, which does not disclose the defect. There is one case which does on its facts involve the latter situation and denies liability in an action predicated upon breach of an implied warranty of wholesomeness. This is Bigelow v. Maine C. R. Co., 110 Me. 105, 85 A. 396, 43 L.R.A.(N.S.) 627 (1912). There canned asparagus served on the dining car of the defendant proved unwholesome. It had been purchased by the defendant under a well known brand put up and guaranteed by a reliable dealer as pure under a local pure food and drug act, and apparently no imperfection in either the can or the contents was observable.

---

tion between the two warranties is unimportant, for whether or not there is an implied warranty that the goods are fit for the purpose of human consumption, there is an implied warranty that they are of merchantable quality; and food which is unfit for human consumption does not satisfy this warranty.

[2] This case was based on Wiedeman v. Keller, 58 Ill.App. 382 (1895) which was reversed in Wiedeman v. Keller, 171 Ill. 93, 49 N.E. 210 (1897). Valeri v. Pull-

man Co., supra, was in part based upon Sheffer v. Willoughby.

[3] Valeri v. Pullman Co., supra.

[4] Sheffer v. Willoughby, supra.

[5] Travis v. Louisville & N. R. Co., supra.

[6] Merrill v. Hodson, supra.

[7] Rowe v. Louisville & N. R. Co., supra.

[8] F. W. Woolworth Co. v. Wilson, supra.

[9] Nisky v. Childs Co., supra.

[10] Kenney v. Wong Len, supra.

On the other hand, representative of the view that there should be liability upon the theory of breach of an implied warranty of wholesomeness are the following cases: Friend v. Childs Dining Hall Co., 231 Mass. 65, 120 N.E. 407, 5 A.L.R. 1100 (1918), the opinion being by Rugg, C. J.; Smith v. Gerrish, 256 Mass. 183, 152 N.E. 318 (1926); Race v. Krum, 222 N.Y. 410, 118 N.E. 853, L.R.A.1918F, 1172 (1918); Barrington v. Hotel Astor, 184 App.Div. 317, 171 N.Y.S. 840 (1918); Temple v. Keeler, 238 N.Y. 344, 144 N.E. 635, 35 A.L.R. 920 (1924); Heise v. Gillette, 83 Ind.App. 551, 149 N.E. 182 (1925). These cases involved respectively: a stone in baked beans served in a restaurant;[11] unwholesome broiled mackerel in a restaurant;[12] poisonous ice cream at a drug store;[13] half a mouse served in kidney saute in a hotel dining room;[14] unwholesome fried fish in a restaurant;[15] and an unwholesome chicken sandwich in a restaurant.[16] These cases, like those first mentioned above, do not involve situations where the harmful article was purchased by the defendant elsewhere and in a form not subject to effective inspection without destruction, and they do not, therefore, constitute necessarily persuasive rulings for liability in such a situation. There are, however, involving the last mentioned class of case and contrary therefore to Bigelow v. Maine C. R. Co., supra, the following cases: S. H. Kress & Co. v. Ferguson, 60 S.W.(2d) 817 (1933), in the Court of Civil Appeals of Texas, where the harmful article was ice cream served in an ice cream soda at a lunch counter, and wherein liability for breach of implied warranty of wholesomeness was recognized despite the defendant's contention that the defect in the ice cream was not discoverable by sight, smell or taste—the same having been purchased by defendant from a reputable dealer; Greenwood v. John R. Thompson Co., 213 Ill.App. 371 (1919), the food being frankfurter sausages so put up as not to be subject to inspection. There are also the two English cases of Morelli v. Fitch, [1928] 2 K.B. 636, and Wren v. Holt, [1903] 1 K.B. 610, both of which were cited in Ryan v. Progressive Grocery Stores, infra, as representing the English rule, the former involving ginger wine of a particular make chosen by the plaintiff and furnished in a bottle the neck of which broke, and the latter involving arsenic in beer, again a particular firm's product, for which the plaintiff asked.

There is a further group of cases which hold the dispenser of food for immediate consumption liable upon the theory of breach of implied warranty of wholesomeness, and which, unless distinguishable upon the ground that they involve sales in the orthodox sense, rather than the mere service or "uttering" of food without the passing of title, are highly persuasive: Ward v. Great Atlantic & Pacific Tea Co., 231 Mass. 90, 120 N.E. 225, 5 A.L.R. 242 (1918), decided on the same day as Friend v. Childs Dining Hall Co., supra, the opinion again being by Rugg, C. J., the case involving beans purchased from the defendant distributor in an unopened can bought by him from a reputable dealer and taken home by the plaintiff purchaser for consumption, a pebble in the beans constituting the deleterious feature; Rinaldi v. Mohican Co., 171 App.Div. 814, 157 N.Y.S. 561 (1916), where the article sold was infected pork purchased by the defendant from a retail dealer and bearing a government stamp to the effect that it was sound and fit for consumption and free from defect; Ryan v. Progressive Grocery Stores, 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339 (1931),[17] the opinion being by then Chief Judge Cardozo, involving a loaf of "Ward's Bread," a brand specifically asked for by the purchaser and taken home for use, containing a pin; Chapman v. Roggenkamp, 182 Ill.App. 117 (1913), the unwholesome article being canned peas sold by a retail grocer; Wiedeman v. Keller, 171 Ill. 93, 49 N.E. 210 (1897), involving a retail sale of pork not known by the retailer to be diseased when sold to the plaintiff;[18] Sloan v. F. W. Woolworth Co., 193 Ill.App. 620 (1915), where the harmful food was a can of herring sold in the defendant's retail store.

The courts holding against liability on the theory of breach of an implied warranty of wholesomeness do so—to make a

---

[11] Friend v. Childs Dining Hall Co., supra.

[12] Smith v. Gerrish, supra.

[13] Race v. Krum, supra.

[14] Barrington v. Hotel Astor, supra.

[15] Temple v. Keeler, supra.

[16] Heise v. Gillette, supra.

[17] Under the New York Personal Property Law (Consol.Laws, c. 41).

[18] Reversing as above explained in footnote 2, Wiedeman v. Keller, 58 Ill.App. 382 (1895).

composite summary of their viewpoints—upon the grounds that: The furnishing of food by a victualer is not a sale but a mere "uttering" of food; even if the transaction were a sale, the damages for breach of an implied warranty of wholesomeness would be only the difference in value between the food furnished and good food, or the purchase money if the food was wholly unfit; there is no historical basis for imposing an insurer's obligation upon a victualer; protection to the public lies in correcting the evil at the source through pure food laws, and laws requiring inspection of meats, canning factories and other sources of food supply, rather than by the imposition of an insurer's liability upon the dispenser; it is not in accord with the general tendencies of the common law to shift the loss from the person immediately suffering injury to the person who has neglected no precaution in supplying the food; a rule of implied warranty would lead to the prosecution of unfounded claims;[19] an implied warranty is unreal and not expressive of the obligations understood to be assumed by the parties to the contract;[20] where the victualer has obtained the food from another in a form not subject to inspection without destruction of marketability, the victualer and the customer have equal opportunity to know of the wholesomeness of the contents and the customer does not rely upon the victualer's skill.[21] Several of the cases cite Beale on Innkeepers and Hotels, 1906, Chap. XIV, § 169, pp. 117, 118, to the effect that an innkeeper "is not an insurer of the quality of his food, but he would be liable for knowingly or negligently furnishing bad and deleterious food" and to the effect that the "title to food never passes as a result of an ordinary transaction of supplying food to a guest; or, as it was quaintly put in an old case, 'he does not sell but utters his provision.' "[22]

Summarizing the viewpoints expressed in the contrary cases, that is, those recognizing liability on the theory of implied warranty: the transaction between victualer and customer is a sale, both under and apart from local sales acts, and consequently there is legal foundation for an implied warranty of fitness;[23] the transaction is at least a "qualified sale";[24] even if the food is said to be "uttered" as distinguished from sold, the relation of guest to tavern keeper is one of contract in which there is an implied term that the food and drink shall not be harmful but shall be appropriate for eating;[25] there can be no intelligent selection by a purchaser—he relies on the skill and trade wisdom of the retailer—his doing so is a necessary inference from the relation of the parties—and there is no basis for an exception to the general rule of liability of a retailer in implied warranty merely because goods are canned;[26] where a sale is by description and the defect latent and inspection impossible, in such circumstances "the law casts the burden on the seller, who may vouch in the manufacturer, if the latter was to blame; the loss in its final incidence will be borne where it is placed by the initial wrong";[27] "the consequences resulting from the purchase of an unsound article may be so serious and may prove so disastrous to the health and life of the consumer that *public safety demands* that there should be an implied warranty on the part of the vendor that the article sold is sound and fit for the use for which it was purchased; it may be said that the rule is a harsh one; but, as a general rule, in the sale of provisions the vendor has so many more facilities for ascertaining the soundness or unsoundness of

---

[19] The above were the views of Judge Hand in Valeri v. Pullman Co., supra.

[20] Sibley, J., in F. W. Woolworth Co. v. Wilson, supra.

[21] This was the theory of the decision in the case of Bigelow v. Maine C. R. Co., supra.

[22] The old case referred to is Parker v. Flint, 12 Mod. 254 (1701), and the proposition "he does not sell but utters his provision" was noted in the report to have been "said" by Wright, Serjeant.

[23] Rugg, C. J., in Friend v. Childs Dining Hall Co., supra.

[24] Andrews, J., in Temple v. Keeler, supra.

[25] Again Rugg, C. J., in Friend v. Childs

Dining Hall Co., supra. He deduces the proposition from numerous ancient authorities to which he refers and which he characterizes as follows:

"It is ancient law that when one resorts to a tavern, inn or eating place, there for a consideration to be served with food for immediate consumption, and is received as a guest by the keeper, a duty is implied that the food shall be fit to eat." 231 Mass. 65, 70, 71, 120 N.E. 407, 408, 5 A.L.R. 1100.

[26] This was the view of Rugg, C. J., expressed in Ward v. Great Atlantic & Pacific Tea Co., supra.

[27] Chief Judge Cardozo in Ryan v. Progressive Grocery Stores, supra.

the article offered for sale than are possessed by the purchaser, that it is much safer to hold the vendor liable than it would be to compel the purchaser to assume the risk."[28]

We are put to a choice in this case between the divergent views of courts and jurists entitled to great respect. The case is, moreover, one of importance. The rule to be established by it for this jurisdiction will affect many dispensers of food and many customers, for public patronage of public eating places—hotels, restaurants, cafeterias, lunch counters, soda fountains, and the like—has come to be, and bids fair to continue to be, under modern conditions of life, upon a large scale.

■ We must decide first the general question whether liability for the serving of unwholesome food should be based upon breach of an implied warranty or upon negligence only. If we choose against warranty and in favor of negligence, there is no further question, because there was no negligence either charged or proved in this case. But if we choose warranty we must still decide whether the general rule of liability in warranty is applicable where, as in the case at bar, the harmful article was bought by the defendant dispenser from another and served to the plaintiff customer in its original form, which was not subject to effective inspection without destruction of marketability. To put it otherwise, there is in this case no legal basis for holding the defendant liable except upon the theory of breach of an implied warranty, and then only if that rule is properly to be applied to the exact situation herein.

As to the general question, we think the better view is that which bases liability upon breach of an implied warranty, rather than upon negligence only. At the outset we think it unnecessary to rest the choice on the answer to the somewhat narrow question whether or not there can be said to be, in the technical sense, a sale of the food. As has been well said in Williston on Sales, Second Edition, 1924, Vol. 1, § 242b, p. 486:

"Even though the transaction is not a sale, every argument for implying a warranty in the sale of food is applicable with even greater force to the serving of food to a guest or customer at an inn or restaurant. The basis of implied warranty is justifiable reliance on the judgment or skill of the warrantor, and to charge the seller of an unopened can of food for the consequences of the inferiority of the contents of the can, and to hold free from liability a restaurant-keeper who opens the can on his premises and serves its contents to a customer, would be a strange inconsistency. A sale is not the only transaction in which a warranty may be implied."[29] The author undoubtedly has reference to warranty in transactions where the relationship of the parties is one of insurer and insured, charterer and owner, innkeeper and guest, and carrier and shipper. The relationship between the dispenser of food and one who consumes it on the premises is at least a contractual relationship. Moreover, it is a relationship of such nature that, in our view, an implied warranty of wholesomeness does reflect the reality of the transaction involved, and express an obligation understood by the parties. The customer does in fact rely upon a dispenser of food for more than the use of due care. He depends upon the experience and trade wisdom of the dispenser in selecting the articles or ingredients of the food, and upon his skill in the preparation and service thereof. The customer has no effective opportunity to inspect or select so far as wholesomeness is

---

[28] This was a quotation by Mr. Justice Gridley in Chapman v. Roggenkamp, supra, 182 Ill.App. 117, pages 121, 122, from Wiedeman v. Keller, 171 Ill. 93, 99, 49 N. E. 210. It is to be noted that in Chapman v. Roggenkamp a retail grocer's sale of canned peas was involved, in Wiedeman v. Keller, a retail sale of diseased pork.

[29] Vold in his work on Sales, 1931, Ch. 6, § 153, p. 477, is of the view that:

"Whatever may have been the case in the more remote past, the present day conditions under which meals are served on a commercial basis have served to blur any sharp outlines there may once have been between the facts of service of food at an inn or restaurant and the sale of food in a grocery store. Food products ready to eat may be bought in stores. If provided at an "automat," luncheon counter, or cafeteria, it is hard to see that factually the transaction is essentially different. Similarly, it is difficult to distinguish factually between the sale of ice cream at the soda fountain of a drug store and the case where the customer at the same soda fountain eats the ice cream in question at the little tables adjoining which have been provided for the purpose."

concerned. He is forced to rely, and the dispenser knows that he is forced to rely, upon the dispenser; the customer knows and the dispenser knows that mere due care in the selection or preparation of food will not fully protect the customer. Nothing will protect him effectively but wholesome food. That is what the customer expects to get and what the dispenser purports to furnish.

The choice of rules here presents an apparent conflict between what has by Dean Pound aptly been termed the social interest in the safety of the individual and the individual interest in substance, that is, in this situation, the interest of the individual dispenser against so heavy a property responsibility as flows from the absolute obligation of a warrantor as compared with the obligation merely to use due care.[30] There is of course also a social interest against imposing an unduly harsh property burden upon the individual dispenser, and if a rule can be selected which will protect the social interest in safety without undue hardship upon the property interest of the individual dispenser of food, that rule obviously will be the sound one.

Restricting recovery by the injured member of the public to cases predicated upon negligence is a seriously inadequate means of securing the social interest in the individual safety, because of the great difficulty of proof for the plaintiff. He can hardly invade the refrigerators, kitchens and pantries of hotels and restaurants to determine whether due care is being used in the keeping, preparation and service of food. He cannot stand present with the defendant or his servants as they inspect and select articles of food, whether at the market or on their own premises. He can hardly expect wholly unprejudiced testimony from the defendant and his servants if they are called as witnesses. Cases will fail for lack of the plaintiff's proof where there was no lack of the defendant's fault, with the result that the individual injured will be unjustly burdened with illness and expense. Moreover, consciousness of liability only where negligence can be shown is by no means as sharp an incentive to the service of good food as consciousness of absolute liability for the service of bad. Also, the harshness of imposing a warrantor's liability upon the dispenser of food is more apparent than real. In respect of food prepared and served on the premises, the dispenser has, in the large, power to make it wholesome by skilled scrutiny and selection of the ingredients and by efficient methods of keeping, preparation and service. It is to be noted, moreover, that the dispenser of food will not alone bear the burden of his financial responsibility as a warrantor. That burden he will charge into the cost of doing business; the public will bear it in the price of food and service. It is true that the common law has been slow to impose insurance liability. The classical examples are the responsibility of the innkeeper for the safety of the guest's property and that of the carrier for the safety of the shipper's goods. It is to be noted, however, that the ultimate reasons underlying these insurance obligations underlie the one suggested here for the dispenser of food. That is to say, the innkeeper is held liable as an insurer of the guest's goods because travelers must of necessity trust the honesty and vigilance of the innkeeper and his servants, and because as between the two the innkeeper is better able than the guest to protect himself against loss. Again, it is the dependence of the shipper upon the carrier together with the difficulty for the shipper who has parted with the possession and control of his goods of proving their loss or injury and how it occurred, that in the large underlies the carrier's insurance liability, whether in ancient days, when it was feared that the carrier might combine with robbers or pretend a robbery, or at the present time when the great volume and distance of carriage have increased the difficulties of proof for the shipper seeking recovery for loss. Briefly, necessity for the protection of that portion of the public concerned, and the imposition of an effective incentive to protect the public are the bases of imposed insurance liability.[31] Measures such as pure food laws and laws

---

[30] On the subject of interests and the means of securing the same, see Outlines of Lectures on Jurisprudence, by Roscoe Pound, Fourth Edition, 1928, 4, XIII and XIV, pp. 60–71; and references therein.

[31] On the subject of the foundation of the insurance liability of innkeepers see: Hulett v. Swift, 33 N.Y. 571, 88 Am.Dec. 405 (1865), and Beale, op. cit. supra, § 181; concerning the basis of carriers' liability see: Poythress v. Durham & S. R. Co., 148 N.C. 391, 62 S.E. 515, 18 L.R.A. (N.S.) 427 (1908).

requiring inspection of foods at the source, such as were mentioned by Judge Hand in Valeri v. Pullman Co., supra, have their value without doubt; but despite them, since the date of Valeri v. Pullman Co., there have been many actions for harm through unwholesome food. We think it better that the public should have the double protection of regulatory measures and the right of suit for breach of an implied warranty of wholesomeness. We conclude in respect of the choice of a general rule of liability that liability should not be restricted to cases of negligence only, but predicated also upon breach of an implied warranty of wholesomeness. We think such a rule much the more effective in securing the public safety, and not unduly harsh so far as the dispenser of food is concerned.

As to the further question, ought there be an exception to this rule where the harmful article was purchased by the restaurant keeper from a reliable dealer and in a form not subject to effective inspection, without destruction of marketability: We see no basis for such an exception, either upon the ground that the rule of implied warranty is not technically applicable to such a situation, or upon the ground of undue hardship to the dispenser. As to the technical applicability of warranty: Again the customer is forced to rely upon the experience and trade wisdom of the dispenser in selecting food obtained from another, such as canned goods, or, as in the instant case, baked goods. Moreover, since liability in warranty is not predicated upon negligence but is absolute and rests in its ultimate basis in large part upon the necessity for public protection, there is no less reason for recognizing it where the dispenser is not able effectively to inspect the goods than where he is. This is put well by Williston, op. cit. supra, § 242, pp. 481–482:

"The imposition of absolute liability upon a dealer who sells canned goods of reputable manufacture has been denied by the Supreme Court of Maine [the author here refers to Bigelow v. Maine C. R. Co., supra] on the ground that the seller cannot possibly discover that a particular can is defective, and that it is, therefore, unjust to subject him to liability. The same argument, however, may be made in regard to any implied warranty, not only of food, but of other articles where the seller could not discover the defect. Accordingly, if canned goods are to be made an exception to the general rule governing sales of food, the whole law of implied warranty should be revised and placed on the basis of negligence. But the general principle of the common law is opposed to this, and certainly if a dealer is ever to be made liable for injuries caused by defective goods where he has been guilty of no fault, the reasons are stronger for holding him liable for selling defective food than in any other kind of sale. According to the weight of authority, presumably for these reasons, a dealer is liable for selling such food even though in cans of a reputable brand. [Here the author refers to a number of cases, including Sloan v. F. W. Woolworth Co., supra, and Ward v. Great Atlantic & Pacific Tea Co., supra.]"

As to the point of the undue hardship upon the dispenser: This again is more apparent than real, for it places the burden ultimately where it belongs. If he was careless, the burden ought to rest on the dispenser. If he was not, he can pass it back to his vendor whom he will know and in the ordinary course have access to and who will be liable over to him in an action for breach of implied warranty; and again, the burden, whether borne by the dispenser, or ultimately by the manufacturer, wholesaler or grower, will be charged into the cost of business and thus spread at large in the price of goods. It is to be noted, moreover, that if in the case of goods bought from another and dispensed in original form, the dispenser is not to be liable in implied warranty to the customer, the latter is put to severe disadvantage indeed. While in the instant case he might, because the confectionery was local, have ascertained its identity, in order to seek relief against it, he would again be in difficulty in respect of proof of negligence, and, in this jurisdiction, without foundation for suit on the theory of breach of an implied warranty, for lack as between him and the confectionery, the dispenser's vendor, of privity. We have so ruled in Connecticut Pie Co. v. Lynch, 61 App.D. C. 81, 57 F.(2d) 447 (1932). Moreover, we should choose a rule suitable to the generality of cases, not merely to a particular case, and in the ordinary instance the customer at a restaurant has no actual access to the manufacturer, wholesaler or grower of food. The national scale upon which food stuffs are marketed makes the cus-

tomer remote from the source of supply.[32] And if the customer must sue outside of this jurisdiction, he will find a division of authority upon the question of liability. As put in Williston, op. cit. supra, § 244, pp. 489–490:

"Many cases have arisen recently in regard to the liability of a manufacturer of food products to an ultimate purchaser from a retail dealer due to the improper character of the food. The general rule that warranties do not run in favor of any but an immediate purchaser has been held applicable in a number of cases where food has been sold to a subpurchaser. Several recent cases, however, have imposed the absolute liability of a warrantor on such a manufacturer in favor of the ultimate purchaser."

On the subjects both of the technical applicability of implied warranty, and hardship to the dispenser, where the food has by him been obtained from another and dispensed in its original form, the comment of the court in Rinaldi v. Mohican Co., supra, is apt. In that case, as pointed out, the defendant retail dealer who sold infected pork to the plaintiff to her injury was held liable for breach of implied warranty and this notwithstanding that the meat appeared to be good, clean and wholesome and that it also bore the United States government stamp to the effect that it was sound, fit for consumption and free from defect. Comparing this with Race v. Krum, supra, where the harmful commodity was ice cream compounded and served by the defendant at his drug store, Howard, J., said:

"neither of these distinctions removes the present case from the operation of the doctrine, for if the principle of implied warranty is to control there can be no distinction between a vendor who compounds the article (as in the case of ice cream) and one who retails goods in the same shape as they were when he bought them, as in this case. In neither case is the vendor accused of negligence or want of care. The implied warranty rule rests upon a principle of public policy. The reason for that rule is stated in Wiedeman v. Keller, 171 Ill. 93, 49 N.E. 210, as follows:

" 'It may be said that the rule is a harsh one; but, as a general rule, in the sale of provisions the vendor has so many more facilities for ascertaining the soundness or unsoundness of the article offered for sale than are possessed by the purchaser that it is much safer to hold the vendor liable than it would be to compel the purchaser to assume the risk.'[33]

"If this is the principle on which the rule rests, no amount of care can relieve the vendor. The government stamp adds nothing to his position, for he has warranted the goods, and whether he has been careful or careless is of no concern. We did not' affirm in the Race Case on the doctrine of negligence or want of reasonable care, but flatly on the doctrine of implied warranty." 171 App.Div. 814, 157 N. Y.S. 561, 562.

With respect to the question of damages in actions for breach of implied warranty: We think the rule not so restricted as indicated in Valeri v. Pullman Co., supra, that is, to the difference in value between the food furnished and good food, or, if it was wholly unfit, to the purchase money. There seems ample authority for the allowance of consequential damages. The cases above discussed as sustaining liability for breach of implied warranty all recognize a right to consequential damages. And see Williston, op. cit., supra, §§ 614, 614a.

We conclude that upon the service of food for a consideration and for immediate consumption upon the premises of the seller, but which food was not prepared by the seller but purchased elsewhere and the defect in which was not discoverable except by destroying the marketability of the article, there is an implied warranty that the food is wholesome, for breach of which an action lies for the recovery of consequential damages. Accordingly, the judgment in the Municipal Court of the District of Columbia must be, and the same is hereby,

Reversed.

---

[32] For a helpful comment on this and upon its relation to marketing conditions see Vold, op. cit. supra, § 149, p. 466.

[33] Quoted in the summary of viewpoints, supra.