**ALEXANDRE OF LONDON, WASHINGTON, D. C., CORPORATION, Plaintiff,**

v.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**Civ. A. No. 2956–57.**

United States District Court
District of Columbia.

March 31, 1960.

James H. Heller, Sher, Oppenheimer & Harris, Washington, D. C., for plaintiff.

Frank J. Martell, Galiher & Stewart, Washington, D. C., for defendant.

WALSH, District Judge.

This case arises from a suit brought by an insured retail clothing store owner, plaintiff, against its insurer, defendant, under a comprehensive dishonesty, disappearance, and destruction policy, to recover as an insured loss the invoice value of certain merchandise which is claimed to have been taken from the plaintiff's retail store located in Washington, D. C., early in 1957.

The provisions of the comprehensive policy, No. CDD 28650B, which are pertinent to the discussion of this case, and under which suit is brought, are as quoted below:

"Insuring Agreements

"Employee Dishonesty Coverage

"I. Through any fraudulent or dishonest act or acts, committed anywhere by any of the Employees acting alone or in collusion with others, including loss of Money and Securities and other property through any such act or acts of any of the Employees, and including that part of any inventory shortage which the Assured shall conclusively prove to have been caused by the fraud or dishonesty of any of the Employees; provided that the Company's aggregate liability as to all Employees shall not exceed the Limit of Liability applicable to this Insuring Agreement I, subject, however, to the provisions of Section 9.

"Loss Caused by Unidentifiable Employees

"If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Assured shall be unable to designate the specific Employee or Employees causing such loss, the Assured shall nevertheless have the benefit of this Insuring Agreement I, provided that the evidence submitted reasonably (in case of inventory shortage, conclusively) establishes that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided further that the aggregate liability of the Company for any such loss shall not exceed the Limit of Liability applicable to this Insuring Agreement I."

Endorsement (Form B) No. 84 of said policy contains Insuring Agreement No. VII, which reads as follows:

" 'Burglary Coverage on Merchandise

" 'VII. Of merchandise, furniture, fixtures and equipment within the premises by Burglary or by Robbery of a Watchman, while the Premises are not open for business, and for damage to the Premises, and to the insured property within the Premises by such Burglary, Robbery of a Watchman, or attempt thereat, provided with respect to damage to the Premises the Assured is the owner thereof or is liable for such damage.

" 'This Insuring Agreement VII does not apply: (1) to loss due to any fraudulent, dishonest or criminal act by any Assured, a partner therein, or an Officer, Employee, director, trustee or authorized representative thereof, whether acting alone or in collusion with others;
* * *

* * * * * *

" ' "Burglary" means the felonious abstraction of insured property from within the Premises by a person making entry therein or exit therefrom by actual force and violence as evidenced by visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the exterior or interior of the Premises at the place of such entry or exit.' "

Agreement VII also provided that the premises, where the alleged merchandise loss occurred, were to be equipped with an American District Telegraph Burglar Alarm System.

The evidence in the case indicates that the loss claimed by the plaintiff is alleged to have occurred sometime between January 26 and March 10, 1957, a period of approximately six weeks. The Testimony shows that on the first of those dates the semi-annual store inventory was begun and during this inventory all of the articles listed as part of the loss were present in the second floor sales room of the store. It was further claimed by plaintiff that on the second date a special stock audit, prompted by the discovery that certain suits were not found in the sales room, was completed, and it was subsequently found that the merchandise consisting of 44 garments,

having a total invoice cost of $3,072.43, was missing.[1]

The evidence also shows that between the above two dates there were four burglar alarm signals received from the plaintiff's store at the American District Telegraph Co. (hereinafter referred to as ADT) central station, i. e., February 19, February 20, February 26, and February 27, 1957.

As noted in the excerpt from the policy quoted earlier, proof of burglary must be accompanied by evidence of visible marks or physical damage to the exterior or interior of the premises at the place of entry or exit. The plaintiff introduced testimony showing that the burglar alarm wire protecting the door had been spliced, and that there was a slack in the wire permitting the trapdoor to be opened a certain extent without setting off the alarm. In addition, it was shown that the hooks on the trapdoor were hanging loose when inspected by one of plaintiff's employees after the loss was noted. Contradictory evidence was introduced with respect to how far the trapdoor could be opened without setting off the alarm.

Plaintiff maintains that each garment had a separate stock number shown both in the inventory stock books and on a tag attached to each garment, and every return, sale, or other disposition of a garment, as a result of legitimate store operations, was recorded opposite the stock number in the inventory books. Also, in the event a garment was returned, a new and separate number was assigned to it. The plaintiff also stresses that the store as a whole, and the customer exits especially, were closely surveilled.

The list of clothing missing as of March 10, 1957, attached to the form referred to as the burglary proof of loss submitted by the plaintiff to the defendant carried description of each garment, its stock number, size and invoice cost.

■ The defendant objects to the plaintiff attempting to prove a loss on the basis of burglary and also on the basis of loss by the dishonesty of unidentifiable employees. Defendant claims that in attempting to prove two entirely separate, distinct and inconsistent types of loss, it has proved neither. Plaintiff meanwhile claims that the exclusion of alternative explanations of loss is the most conclusive proof available to assert a claim under a policy allowing recovery for dishonesty when the employee or employees cannot be found. This Court accepts the contention of the plaintiff in this respect for it is considered that the facts in this case raise serious questions as to which of the two alternative explanations of loss, if any, might prevail. The plaintiff's argument and the basis of their case is consistent, it would seem, with the concept as well as the spirit of a comprehensive insurance policy which insures against burglary as well as loss occasioned by the dishonesty of unidentifiable employees. Each of the plaintiff's alternative theories, will, therefore, be examined.

The Court will first focus its attention on Agreement I of the basic comprehensive policy which provides for the recovery of losses incurred as a result of dishonesty of employees where the insured is unable to designate the specific employee or employees causing such loss. There is no case that has arisen in this jurisdiction involving a loss under a comprehensive policy such as is involved in this case.[2]

1. The loss initially claimed by the plaintiff in the claim filed with defendant totaled $3,244.43. The evidence shows that the downward revisions were apparently made as a result of material found to be in stock, sold, or shipped to plaintiff's retail store in Virginia.

2. However, if this is one of the "open spaces" in the law in this jurisdiction, it must be filled with a view to the social interests which seem to be involved, with such aid as can be obtained from authorities elsewhere, and from logic, history, custom, utility, and the accepted

There is a division of authority in other jurisdictions upon the question presented by a claim on the basis of an inventory shortage for recovery for a loss sustained because of the dishonesty of unidentified employees. It is sometimes difficult to find any real distinction between the two authorities, and the distinction is more apparent than real. Nevertheless, there is a distinction. One of the distinctions, it appears, lies in the type of inventory control involved by which the insured attempts to prove his loss, and therefore the method employed by the plaintiff in this case will be reviewed in detail. In other cases, because the insurance policies involved almost invariably state that the insured must "conclusively" prove the loss was due to employee dishonesty, the appellate courts have refused to upset the rulings of the lower courts because (1) they felt the trial judge was better able to ascertain the facts and his findings should not be set aside unless clearly erroneous, or (2) they considered that, even if the facts or evidence were generally not in dispute, the trial judge has an inherent right to draw inferences and conclusions from such evidence, and if there was a basis for such inferences the court should not review the matter. Therefore, what has been held to be "conclusive" in one court may, on similar facts, be held to be "surmise or suspicion" in another, and it is in this area that the distinctions may become very fine.

It is considered that the leading cases on each side of the question have been so thoroughly set forth and discussed in the briefs submitted that it is needless to discuss other than the more germane cases arising in the Federal courts in this opinion. In discussing these cases, the Court will observe, by what it believes appropriate comment, where they are distinguishable, if at all, from the case here before it.

The case of Morrow Retail Stores, Inc. v. Hartford Accident & Indemnity Co., D.C.N.D.Idaho1953, 111 F.Supp. 772, 773, cited by plaintiff, bears a close relationship to the instant case for it is the only case cited by the parties which interprets an employee dishonesty coverage provision worded exactly as the one in the policy involved here. In that case, the plaintiff operated three stores, but its claim under the policy for inventory shortage was based on the dry grocery and produce departments of one store. These two departments were physically separated from the rest of the store, and the retail accounting method was used for inventory by the insured. This method entails a physical inventory of the stock taken on the retail price basis of valuation at the beginning of a period. The addition to that figure of the total amount of purchases during the period at retail price, i. e., wholesale cost plus mark-up, and the subtraction therefrom of the total merchandise sales, as well as mark-downs or reductions in retail price, and reported spoilage, will result in the book value inventory. The court there recognized that the physical inventory at the end of the period, using this method, would show "an amount less than the book inventory, and the shortage would represent the sum total of bookkeeping errors, errors in taking inventories, unreported mark-downs and spoilage, and losses due to outside burglary, customer pilferage, and theft by employees". The court found that by the process of the elimination of other causes, that the insured had correctly attributed the shortage to theft by unknown employees for they had thereby "conclusively" established the cause of the shortage.

Plaintiff here, on the facts, is in a far better position for maintaining its claim than was the plaintiff in the Morrow case. The inventory system employed by the plaintiff is referred to by defendant as an English system; however, it appears to involve merely a perpetual in-

standards of right conduct. Clark v. Associated Retail Credit Men, 1939, 70 U.S. App.D.C. 183, 105 F.2d 62; See also Cushing v. Rodman, 1936, 65 App.D.C. 258, 82 F.2d 864, 104 A.L.R. 1023.

ventory system [3] augmented by an item identification stock control system which gives far stricter accountability and a better basis for establishing and determining the cause of inventory shortages than does the retail method. The plaintiff used paper tags to identify individual items of clothing as they were taken up in stock, and these items were so identified when hanging on the customer display racks. Also, in clothing establishments, breakage, spoilage, etc., are virtually non-existent. Furthermore, accounting errors due to mark-downs or reductions in prices do not exist in the present case inasmuch as the claim for recovery is made at invoice cost price. The surveillance by employees in the Morrow case to eliminate the possibility of theft by customers was apparently no better than in the instant case, plus the fact that certain of the items in a grocery store would undoubtedly lend themselves to customer theft more readily than would suits of clothing. Also, in order for items to have been secreted out of the plaintiff's store during working hours, they would have had to be taken from the second floor, down a stairway, and carried from the back of the store through the customer exit at the front of the store. While the plaintiff in the Morrow case subtracted a maximum allowance from their claim for imponderable factors, such factors are either non-existent here or the possibility of loss through such means has been negated by the testimony or evidence introduced by the plaintiff.

As recognized by the court in the Morrow case, the "crux of the problem presented is the degree of proof to be required of the plaintiff under the provision of the policy, quoted above, that in the case of an inventory shortage, alleged to be due to fraud or dishonesty of unknown employees, the evidence shall 'conclusively' establish the cause of the shortage". In resolving this problem the court there held:

"In the instant case, the conclusive evidence requirement of the insurance policy evidently was intended to put upon the plaintiff the burden of showing by a degree of proof higher than a mere preponderance of the evidence that its inventory shortage was due to employee dishonesty. However, when the requirement is given a reasonable construction, consistent with the terms of the insurance contract as a whole, it does not appear to necessitate the adduction of incontrovertible, beyond the possibility of contradiction, proof, but only evidence that is clear, satisfactory, and convincing to the trier of the facts. The court finds that the evidence offered by the plaintiff measures up to that standard."

The defendant cites the case of Paper v. Boston Insurance Co., 1957, 100 U.S. App.D.C. 178, 243 F.2d 601, as ruling in this jurisdiction with respect to plaintiff's claim. However, that case is distinguishable from the one here. The policy there involved was a mercantile

---

3. The perpetual inventory system requires the maintenance of records that offer a running summary of inventory items on hand. When perpetual inventory records are maintained, individual accounts are kept for each class of goods on hand. Increases in inventory items are recorded by debits, and decreases are recorded by credits; the resulting balances represent the amounts on hand. Perpetual records may be kept in terms of quantities only, or in terms of both quantities and cost. When the perpetual system is employed, physical counts of the units on hand should be made at least once a year, and preferably at more frequent intervals to confirm the book record and provide for its correction. Variation between the book record and the amounts actually on hand resulting from errors in recording, shrinkage, breakage, theft, and other causes should be recognized and the book inventories brought into agreement with the physical count. This system offers the advantages that purchase planning is facilitated, adequate supplies on hand are assured, and losses through damage and theft are fully disclosed. Karrenbrock and Simons, Intermediate Accounting, (3rd ed., 1958).

open stock burglary policy and contained no provision for recovery in the case of losses caused by unidentifiable employees. In addition, recovery on the policy there was conditioned on the insured maintaining records in such a manner that the insurer could accurately determine the amount of loss. The court found that the records were not so maintained.

In the case of Cobb v. American Bonding Co. of Baltimore, 5 Cir., 1941, 118 F.2d 643, relied on by the defendant here, suit was brought under a fidelity bond where the terms of the contract indicated that recovery was to be allowed for "that part of any inventory shortage which the Insured shall conclusively prove is caused by the dishonesty of any Employee or Employees". The insured there employed a retail perpetual control of inventory which allegedly revealed shortages in eight of the insured's retail stores. The Court there concluded:

"Under the bookkeeping system used by the plaintiffs shortages would be reflected by any number of things other than dishonest conduct of employees. Moreover, it is highly improbable that employees in eight separate and independent stores were at the same time making shortages in a dishonest or fraudulent manner.

"Viewing all the evidence in the light most favorable to the plaintiffs it, at most, creates no more than a surmise or suspicion that some of the shortage reflected by the inventories might have been due to dishonesty on the part of an employee or employees."

The Cobb case is one of the leading cases denying recovery to an insured for inventory shortages claimed to be due to employee dishonesty. However, the Fifth Circuit followed the Morrow case in a recent opinion, which, while it does not overrule the Cobb case, indicates the reluctance of the appellate courts to upset a determination drawn by the lower

court as to whether the evidence is "conclusive" or amounts to mere "surmise or suspicion" that the inventory shortage is due to dishonesty on the part of unidentified employees. New Amsterdam Casualty Co. v. W. D. Felder & Co., 5 Cir., 1954, 214 F.2d 825. The suit in the Felder case was on a fidelity bond, as was the suit in the Cobb case, and the bond covered losses of property by acts of dishonest employees, including inventory shortages, and if the insured was unable to designate the specific employee causing the loss, the insured was still to recover for the loss if the evidence conclusively established that the loss was in fact due to the fraud or dishonesty of the employee or employees. The court found for the insured by placing what it characterized as a reasonable construction on the need for "conclusive" evidence.

The defendant here also relies on the case of Gaytime Frock Co. v. Liberty Insurance Co., 7 Cir., 1946, 148 F.2d 694, 696. In that case, an employer sued on a fidelity bond similar to that in force in the Cobb case, and the court followed the ruling in the Cobb case. In Gaytime Frock case, a porter was arrested but acquitted of theft where 39 dresses were found missing from a storeroom within 3 or 4 minutes after a saleslady had finished counting them before closing for the evening. The Seventh Circuit, on an appeal from a judgment for the insurer, upheld the trial court, but care was taken to point out that the sole question involved revolved "about the propriety of the inferences * * * drawn from the evidence by the trial judge".

The court in the more recent case of Glens Falls Indemnity Co. v. National Floor & Supply Co., 5 Cir., 1957, 239 F.2d 412, cited the Felder, Cobb and Morrow cases, but because the appellant there treated the matter in the argument as requiring only the usual standards of proof, the requirement that the insured prove "conclusively" that the loss was

caused by the dishonesty of employees was not gone into.[4]

The general rule has been stated to be that "conclusive" evidence in burglary and theft policies should be interpreted so as not to give the term its strict technical meaning, but rather it should be given a reasonable construction, i. e., evidence reasonably establishing a loss.[5] Morrow Retail Stores v. Hartford Accident & Indemnity Co., supra. It has been held in this jurisdiction that where the provisions of a policy of insurance are reasonably susceptible of two constructions consistent with the object of the obligation, the one favorable to the insured and the other favorable to the insurer, the former will be adopted. Pennsylvania Indemnity Fire Corporation v. Aldridge, 1941, 73 U.S. App.D.C. 161, 117 F.2d 774, 133 A.L.R. 914. The court there refused to apply a strict construction to a word in the policy disputed by the parties, and found for the insured.

The plaintiff here by means of a strict inventory and stock control system has proved in great detail, i. e., by item number, size, etc., a loss or disappearance. The size of the loss, the short time in which it disappeared, and the downward revisions in the claim, help to rule out losses by certain imponderable factors such as accounting errors. By a process of elimination of other causes, *except* the alternative theory for recovery due to burglary, the plaintiff has attributed the inventory shortage to theft by unknown employees.

This Court is of the opinion that in this case, after a full and careful consideration of all the evidence, and a review of the term "conclusively" as used in the insurance policy in the context in which it appears, i. e., taking the policy as a whole into consideration as well as what appears to have been the purposes and intentions of the parties when the contract was entered into,[6] *but for* the probability of loss by burglary, that the requirement that the evidence in the case must "conclusively" establish that the loss was due to the dishonesty of employees, was met by the plaintiff here by a showing of clear, satisfactory, and convincing evidence.

The Court turns its attention next to the second theory advanced by the plaintiff as a ground for recovery. This refers to Insuring Agreement No. 7 which added burglary coverage (see portion of agreement quoted earlier in this opinion) to the plaintiff's comprehensive policy.

The main point of contention with respect to the claim for recovery under the burglary provisions of the policy centers around the question as to whether there was, as required by the policy, "entry * * * or exit * * * by actual force and violence as evidenced by visible marks made by tools, explosives, electricity or chemicals upon * * * the exterior or interior of the Premises at the place of such entry or exit". As noted in the annotation appearing at 169 A.L.R. 236, this question is a factual one that is normally determined upon the facts as they exist in the specific case before the court. As recited in the cases appearing there, the requirement that there be visible marks varies from a requirement of slight to substantial evidence.[7] In this case, the plaintiff introduced evidence that the

4. The court did indicate in a footnote that the question of conclusiveness of proof was pretermitted in the Cobb case.

5. The following statement appears in 29A Am.Jur. 982, Insurance, § 1929: "Under policies requiring direct and affirmative evidence of burglary, larceny, or theft, the courts refuse to construe the term 'direct and affirmative' or 'conclusive' evidence in its strict, or technical sense,

as to do so would render the policy valueless except in the most unusual cases; thus, the fact that the evidence is wholly circumstantial will not defeat a recovery on such policies."

6. See Husch Bros. v. Maryland Casualty Co., 1925, 211 Ky. 97, 276 S.W. 1083.

7. National Surety Co. v. Silberberg Bros., Tex.1915, 176 S.W. 97; see also 41 A.L.R. 853, 855.

electric burglar alarm wire, installed at the trapdoor on the roof of the plaintiff's building as part of the burglar alarm system installed by the ADT, had been spliced. There was also evidence that there was a slack in this wire at the trapdoor that permitted the door to be opened to a certain extent without setting off the burglar alarm, that is, the wire did not set off the alarm until a certain amount of tension was placed on it. The plaintiff introduced testimony to the effect that the trapdoor could be opened 15 inches (room to permit a man's body to pass through) without setting off the alarm, while the defendant introduced testimony that the door could be opened only 4 to 6 inches without setting off the alarm. The plaintiff also introduced evidence to show that the fastening hooks on the trapdoor were found hanging loose when an investigation was made after the loss was discovered. In addition, the ADT employees testified that four night burglar alarms had been registered at their central station from the plaintiff's retail store during the six-week period here in question. This was more than the number of such alarms reported at the store in the following eight months. While it was suggested that some of these alarms might be explainable by faulty electric circuits, etc., no specific explanation was given by the ADT for each of the four alarms at the retail store during the time here in question.

The defendant relies on the case of Paper v. Boston Insurance Co., supra, as stating the law in this jurisdiction with respect to visible evidence of outside breaking and entering. In that case, the insured found that a skylight or manhole in the roof over the second floor of the stockroom of the store had been broken through. However, the holding of the court there was that there was "no indication that any shortage was caused by any particular burglary, or at what time the shortage, if any, occurred, or what goods were missing." [100 U.S.App.D.C. 178, 243 F.2d 602.] The court then went on to hold that this point was dispositive of the case. Dictum in the case indicates that the court failed to find evidence of felonious entry when the premises were not open for business, or evidence of any visible marks upon the exterior of the premises as required by the contract. The dictum in that case was a factual finding which is not binding on this court. With respect to the holding in that case, as it applies to this case, there is a shortage proved here within a six-week period, and specific goods have been identified as missing, as a result of the plaintiff's detailed accounting methods. In the Paper case, the court found that a reduction suffered by the plaintiffs in the percentage of their gross profits over a period of time was attributed by them to a loss of inventory. Also, in that case, there was no alarm system installed in the building such that particular burglaries could be ascertained, if they occurred at all. Here we have four burglar alarms reported to the ADT central station within the six-week period and a special audit conducted at the end of that period which showed an unexplained inventory shortage by itemized descriptions of the items missing. While a particular burglary cannot be shown to have occurred on any one specific date of the reported alarms in February, 1957, this Court is satisfied that a particular burglary occurred on one of those dates.

Visible marks made by tools or electricity upon the exterior of the entry or exit satisfies the requirements of Insuring Agreement No. VII of the insurance policy. A reasonable interpretation placed on the facts as they exist in this case, i. e., the spliced wire, the slack in the wire, and the unfastened hooks on the trapdoor, are evidence of visible marks at the exterior of the place of entry. Here the tampering with the electrical alarm wire and the hooks of the door permitted the door to be opened without setting off the alarm. Whether the opening provided by the slack alarm wire was wide enough to permit the ingress and egress of a man's body is open

to inferences as arrived at from the facts.

Since there is affirmative evidence of tampering with the trapdoor, the frequent burglar alarms were not satisfactorily explained, and there was an inventory shortage, the Court finds that plaintiff has established by a preponderance of the evidence the inventory loss was caused by burglary under Agreement VII of the insurance policy.

The Court, therefore, finds for the plaintiff in the sum of $3,072.43.

Counsel for plaintiff is directed to submit an appropriate order granting judgment in the amount noted above.